[Civ. No. 17014.   Second Dist., Div. One.   July 12, 1949.]

HARRY GOLDBERG et al., Respondents, v. SOUTHWEST-
ERN METALS CORPORATION, Appellant.

J. George Bragin for Appellant.

Cummins, Goodstein & Paltun and Maurice Mac Goodstein
for Respondents.

DORAN, J.—The action herein arose out of a contract of
sale whereunder appellant corporation located in Los Angeles
undertook to sell and deliver to respondents whose plant was

in Denver, one carload of 280 aluminum sheets. The aluminum was shipped with order bill of lading consigned to appellant with arrival draft attached. Respondents, upon notification by the railway company, paid the arrival draft in the sum of $14,577.35, together with a freight bill of $707.92. Upon inspection of the shipment it was found that the aluminum sheets were damaged and not fit for respondents' use whereupon respondents declined to accept the shipment. Appellant refused to return the money paid, and the present action resulted. The trial court found that the damage was caused by appellant's negligent loading of the car and gave judgment for the respondents.

The record discloses that on October 8, 1946, the plaintiff Lee Elder, partner with the plaintiff Harry Goldberg, telephoned from Denver to the Southwestern Metals Corporation in Los Angeles, and placed the order in question with a Mr. Shonberg, appellant's sales manager. The order was later confirmed by a letter from Mr. Elder, containing a description of the aluminum ordered and stating: "Please let us know when we may expect shipment and whether you are sending it with a sight draft or some other method. Please send the draft through the Central Bank & Trust Company if this method is used."

There is evidence that no method of shipment was specified by the buyers; that the price was f.o.b. appellant's warehouse in Los Angeles; that the appellant seller selected the Progressive Transportation Company to do the hauling and loading of the aluminum, and that the car was sealed by the transportation company. The trial court's finding that appellant was negligent in not properly blocking and bracing the carload of aluminum resulting in the damage complained of, finds support in the evidence.

It is the appellant's contention that "Title to or property in the goods passed under the facts in issue regardless of whether or not the goods were properly loaded by the intermediary carrier"; that title passed before delivery at Denver; and that the appellate court "is not bound by the determination of the passing of title by the trial court if there are no facts or evidence in the record to support such a finding."

Respondents' position is that "Title to or property in the goods could not pass under the facts in any event until the goods were properly loaded; that title did not pass until delivery in Denver; that since there is evidence supporting

the trial court's findings that delivery was to be made by appellant in Denver; that appellant had warranted the quality of the merchandise and by reason of improper loading, the aluminum was damaged and not fit for respondents' purpose, the judgment should be affirmed.''

Under the well established rule that a reviewing court will will not disturb a finding of a trial court where such finding has support in the evidence, the judgment in the instant case must be affirmed. It is conceded that appellant selected the Progressive Transportation Company to haul and load the aluminum shipment here in question, and that the merchandise was improperly blocked and braced in the car. Appellant, however, seeks to escape liability by denominating the Progressive Transportation Company as an "intermediary carrier," rather than as appellant's agent. The contention is that title to the shipment passed "prior to the aluminum being placed in transit"; that the risk of loss then "became fixed," and that whatever happened thereafter cannot be blamed on the appellant seller. Although various cases are cited by appellant, none has been pointed out which bears any resemblance to the present controversy or which would justify a reversal under the record here presented.

In the language of respondents' brief, "the whole question as to when title or property in the goods passes is one of intention of the parties, . . . and the question is one of fact." Section 1738 of the Civil Code provides that "Where there is a contract to sell specific or ascertained goods the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." Section 1739 of the Civil Code, prescribing various "Rules for ascertaining intention," and relied upon by appellant, is called into operation "Unless a different intention appears," and then only. Consequently, the provision of section 1739 that "Where in pursuance of a contract to sell the seller delivers the goods to a buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract" etc., can have no application in a case where the intention of the parties is otherwise disclosed.

■ In the instant case the record discloses substantial evidence and reasonable inferences arising from the facts to the effect that, as the trial court found, "said defendant agreed to sell and deliver to plaintiffs in the City and County of Denver," the merchandise in question; and that appellant, through its agent, improperly loaded the car, by reason of which act the damage occurred. As respondents' brief points out, "In order . . . to concur with appellant's argument . . ., the contract of sale, . . . the circumstances of the case, and the facts as found by the trial court . . . would have to be entirely disregarded." To relieve appellant from liability for damage resulting from its act in improperly packing the shipment would, under the facts in this case, establish a precedent at odds with previous decisions, leaving a buyer without the protection to which he is entitled.

The facts in reference to the sale of the aluminum are without material conflict and have heretofore been recited. There is nothing in the record to indicate that the parties to the sale intended to relieve the seller from the usual duties in reference to packing the shipment. Apropos thereto is the statement in Williston on Sales, Revised edition, page 81, where the author says: "The seller must not only observe the express terms of the order or contract, but must also fulfill such obligations as the law imposes, irrespective of express bargain. *Goods, therefore, must be packed in a reasonably careful manner, having in view the nature of the goods and the transit, or the property will not pass.*" (Respondents' italics.)

It is to be observed that the arrangements, orally made by telephone, were quite ordinary both as to substance and form. Respondents, as prospective buyers, were in need of a particular type of aluminum sheets for use in the building of trailers at Denver, Colorado. A telephone conversation with appellant seller, located in Los Angeles, elicited the information that the appellant had the necessary stock, whereupon respondents ordered a carload to be shipped to respondents' plant in Denver. The telephone negotiations were, as is often the case, fragmentary and informal, as for that matter, was the confirmatory letter which followed. The intent, however, seemed clear enough to the trial court, namely that delivery in Denver was contemplated and that the buyers expected the shipment would be properly packed for the journey. Had the intention been to relieve the seller from the usual duty of attending to the packing of the car, or that title with all risk should pass before the aluminum was packed and shipped,

it is reasonable to suppose that such an important condition would have been expressly evidenced in one way or another. It was not.

Appellant, however, does not claim that there was any express stipulation relieving it from liability, and certainly the evidence shows no such arrangement. The position of appellant is rather that by reason of the presumption specified in section 1739 of the Civil Code, hereinbefore referred to, the moment it turned over the goods to the trucking company, the seller was "presumed to have unconditionally appropriated the goods to the contract," title passed to the buyers and all liability on the seller's part ceased to exist. But, as before stated, no such presumption can arise except in those cases where the parties' intention is not manifest. It is fundamental that actual intention of the parties must govern in all cases where the same can be ascertained. Any other use of a presumption would in effect amount to a disregard of actual intention and the judicial manufacture of a contract which the parties never intended to make. And its use in the instant case would also assume that the arrangement between the parties was an unusual one rather than the quite ordinary agreement evidenced by the record.

The language used in Williston on Contracts, page 2678, section 960, is clearly applicable to the instant case: "It is evident that there can be no possibility of throwing risk of loss or deterioration upon the buyer where goods are shipped to him unless the goods are sent in conformity with an order or contract and by a proper method of shipment. The property will not otherwise pass to him, and no reason can be suggested for imposing the risk upon him of goods which he did not order or which for any reason were improperly sent." Since the judgment of the trial court finds support in the record, and reasonably applies the law to the facts, no interference is justified.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.