[Civ. No. 22706. Second Dist., Div. Three. July 22, 1958.]

RICHARD L. SCHUCH et al., Appellants, v. NORTHRUP-JONES, INC. (a Corporation) et al., Defendants; CHARLES H. KAPLAN et al., Respondents.

Andrew J. Copp, Jr., and H. Dexter McKay for Appellants.

Albert H. Allen, Michael J. Fasman and Leonard S. Wolf for Respondents.

PATROSSO, J. pro tem.*—Plaintiffs instituted this action in claim and delivery to recover the possession of certain air conditioning and refrigeration equipment. Judgment was rendered in favor of the defendants and plaintiffs appeal.

The material facts are not in dispute. Respondents were the owners of a building in the city of Los Angeles and on July 29, 1954, they entered into a lease with Northrup-Jones, Inc.,[1] covering a portion of the ground floor space and part of the basement of said building for a term of 10 years. The

---

*Assigned by Chairman of Judicial Council.

[1]Although originally named as a defendant, the action was later dismissed as to Northrup-Jones, Inc., and it is not concerned in this appeal.

lessee took possession of the premises on September 14, 1954, and occupied the same until February 3, 1955. On September 14, 1954, appellants entered into a written agreement with Northrup-Jones wherein and whereby appellants agreed to sell to the latter and install in the leased premises, certain air conditioning and cooling equipment, in consideration of which Northrup-Jones agreed to pay appellants the sum of $22,556.40, payable one-third upon the signing of the contract, one-third within 10 days after delivery of the equipment and the balance upon the completion of the work of installation, less 10 per cent to be withheld pending the filing of the notice of completion. Pursuant to the terms of this contract, Northrup-Jones paid to appellants the following amounts: $7,500 on September 17, 1954; $7,537.50 on October 21, 1954, and $5,518.90 on December 6, 1954, leaving a balance unpaid thereon of $2,000.

On October 31, 1954, the same parties entered into a second contract whereby appellants agreed to furnish and install in the same premises certain described refrigeration equipment in consideration of which Northrup-Jones agreed to pay appellants the sum of $9,787. On December 5, 1954, Northrup-Jones paid on account of its contract the sum of $5,000, leaving a balance unpaid thereon, after certain adjustments, of $4,837.39. Neither of these agreements contained a provision reserving title to the equipment in appellants.

The delivery of the equipment and the work of installing the same was completed by December 19, 1954, at which time the equipment was in working condition and it was used continuously thereafter by Northrup-Jones until February 3, 1955. On January 14, 1955, appellants requested payment of the balance due under the two contracts previously mentioned but were advised by Northrup-Jones that it was unable to make payment. Thereupon, as he testified, appellant Richard L. Schuch suggested the execution of a "conditional sales contract, whereby we could tie up the equipment installed for security, and which would allow me to sell the contract written to a bank and get my funds to be able to operate." Pursuant thereto a written agreement in the form of a conditional sales contract was prepared and executed by appellants as sellers and Northrup-Jones as purchaser. This agreement recites that the sellers sell and the purchaser purchase the equipment covered by and described in the two previous contracts for a total sum, including sales tax and installation,

of \$32,416.40[2] "*Less*: Cash, receipt of which is hereby acknowledged" in the sum of \$25,579.01, plus a "time sales charge" of \$410.24. The amount shown as due thereunder, \$7,247.63, is provided to be paid in 12 monthly installments of \$604.07 on the first day of each month commencing February 1, 1955. The agreement recites that "Title to said property shall not pass to the Purchaser until all sums due under this contract are fully paid." There was no change of possession of the equipment at the time of or following the execution of this agreement, and the agreement was neither acknowledged nor recorded.

On February 3, 1955, Northrup-Jones filed a voluntary petition in bankruptcy and was thereafter adjudicated a bankrupt. The trustee in bankruptcy took possession of the assets of the bankrupt including the equipment here involved and thereafter sold the same and other property of the bankrupt to respondents, which sale was confirmed by the bankruptcy court on May 3, 1955. No proceedings were had in the bankruptcy court whereby appellants sought to reclaim the property in suit or wherein the validity of any right or claim of the appellants therein or thereto was adjudicated.

As reflected by its findings and conclusions of law, the trial court held that the agreement of January 14, 1955, was not a valid conditional sales contract but was a chattel mortgage which was void as to the trustee in bankruptcy for want of acknowledgment and recordation, in consequence of which respondents acquired title to the property described therein, free of any claim of lien by the appellants.

The appellants contend (1) that the conditional sales agreement of January 14, 1955, was valid and (2) that if not, it was a chattel mortgage valid as between the parties and all persons having knowledge thereof, and that both the trustee in bankruptcy and respondents had such knowledge at the time the latter purchased the equipment from the trustee.

If, as the trial court found, the title to the equipment in question had passed to Northrup-Jones prior to January 14, 1955, the trial court was clearly right in concluding that the purported conditional sales agreement was void as to North-rup-Jones' creditors and its trustee in bankruptcy for thereby

---

[2]The evidence is to the effect that of this sum the market value of the equipment furnished by appellants under the previous sales contract which is described in the conditional sales contract and here involved, was between \$18,000 and \$20,000, the balance of the contract price representing the charge for labor and materials used in installing the same.

the parties purported to revest title to the property therein described in the appellants without immediate delivery or an actual and continued change of possession thereof. And this, notwithstanding the fact that any or all of the transferors' then creditors may have had actual knowledge thereof at the time of the attempted transfer. (*Joseph Herspring Co.* v. *Jones* (1921), 55 Cal.App. 620, 624 [203 P. 1038].) And absent an actual change of possession the transfer must be deemed a mortgage. (Civ. Code, § 2924; *Wehrle* v. *Marks* (1933), 134 Cal.App. 141, 144 [25 P.2d 51] ; *Dennes* v. *Butts* (C.A.9th), 90 F.2d 522, 524.)

Appellants, however, contend that the title to the equipment in question did not pass to Northrup-Jones prior to the time of the execution of the conditional sales contract. In support thereof appellants assert that the evidence is such as to compel the conclusion that the parties intended that the title to the property should remain in the appellants under the agreements pursuant to which it was sold and delivered to the purchaser Northrup-Jones until the price was fully paid and until the expiration of the 90-days' free service period following the completion of the installation, and that the trial court's finding to the contrary is erroneous.

In determining when title to goods passes to the buyer the actual intention of the parties must govern where it can be ascertained, and no statutory presumption as to passing of title can arise except in those cases where the parties' intention is not manifest. (*Goldberg* v. *Southwestern Metals Corp.* (1949), 92 Cal.App.2d 819, 821 [208 P.2d 75].) As therein said:

''In the language of respondents' brief, 'the whole question as to when title or property in the goods passes is one of intention of the parties, . . . and the question is one of fact.' Section 1738 of the Civil Code provides that 'Where there is a contract to sell specific or ascertained goods the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.' Section 1739 of the Civil Code, prescribing various 'Rules for ascertaining intention,' and relied upon by appellant, is called into operation 'Unless a different intention appears,' and then only.''

■ Contrary to appellants' contention, there was before the trial court substantial evidence which supports its finding that the parties intended title to the equipment to pass upon the completion of the installation of the equipment in the purchaser's premises. This consists of the following: (1) the contracts of sale contained no express reservation of title in the vendor; (2) a substantial part of the purchase price was paid by the purchaser at the time of and shortly following the execution of the contracts (*Woodbine* v. *Van Horn* (1946), 29 Cal.2d 95, 107 [173 P.2d 17]); (3) at the time of the execution of the contracts and negotiations preceding the same, there was no mention of a conditional sale and the reservation of title in the appellants; (4) the testimony of appellant Richard L. Schuch previously mentioned to the effect that his purpose in requesting the execution of the conditional sales contract of February 14, 1955, was so that "we could tie up the equipment installed for security." It is hardly reasonable to believe that if, as appellants now contend, it was their original intention to retain title to the equipment and appellants so understood the effect of the previous contracts, they would at that late date be requesting the execution of an agreement whereunder title should be vested in the appellants by way of security for the payment of the balance of the purchase price.

■ Civil Code, section 1739, prescribes the rules for ascertaining the intention of the parties as to the time at which property in the goods is to pass to the buyer. Rule 1 thereof reads as follows: "Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery or both, be postponed." Appellants, in reliance upon this provision, contend that the equipment in suit was not in "deliverable state" on the date when the purported conditional sales contract was executed and hence that title did not then pass. This argument is rested upon the terms of the previous contracts which obligated the appellants to provide "ninety day free service" of the equipment after the installation thereof was completed. This fact, however, does not operate to establish that the equipment was not in a "deliverable state" at the time it was delivered and installed in the premises of the purchaser. The equipment was in actual operation for approximately a month before the conditional sales contract was executed. There is no claim or evidence to

the effect that the equipment was defective or not properly operating. The only evidence in the record is that service calls were made by the appellants from time to time to adjust the ducts and to regulate the distribution of air throughout the premises. Insofar as the record discloses, each item of equipment was a separate unit complete in and of itself and in a deliverable state. Nor is it without significance that, while appellants now contend that title to the equipment was not to pass to the purchaser until after the expiraion of 90 days following the completion of its installation, appellants nonetheless billed the purchaser for the balance due upon both contracts on December 20, 1954, the day following completion of the installation.

Moreover, assuming without conceding, that the equipment was not in a ''deliverable state'' as appellants contend, it does not follow that because of this it is conclusively presumed, as appellants' argument implies, that title did not pass when the contracts were executed and the equipment delivered to the purchaser. This is clearly pointed out in *Woodbine* v. *Van Horn, supra,* 29 Cal.2d 95. There, the plaintiff and defendant had entered into a contract whereby the latter agreed to sell to the former ''all of the eucalyptus wood located on'' certain described premises. The wood was to be cut in specific lengths and split by the defendant seller. The contract was silent as to when title to the wood should pass to the buyer. The trial court held that title passed upon the execution of the contract and there, as here, the seller contended that the goods were not in a ''deliverable state'' at the time of the execution of the contract by reason of the fact that the wood remained to be cut and split by the seller. In rejecting this contention the Supreme Court said (p. 107): ''If, after the execution of an agreement, the seller is bound to do something to the specific goods, for the purpose of putting them into a deliverable state, a presumption arises that the parties did not intend that the property pass until such thing be done. (Civ. Code, § 1739, Rule 2.) Under the terms of the agreement, Van Horn, the seller, had to cut the wood into certain lengths and split some of the wood before the goods would be in a deliverable state. *But this presumption is not conclusive if there is substantial evidence justifying a determination that the contract is one of sale.*

''The conduct of the parties frequently shows whether they regard the bargain as passing the property and the fact that part of the purchase price is paid by the buyer is evidence

that the parties contemplate an immediate transference of the property in the goods. (*Gianelli* v. *Globe etc. Co., supra,* p. 106 [48 Cal.App. 103 (191 P. 720)]; see Vold on Sales, p. 131 and cases cited under note No. 31; 22 Cal.Jur. 955.)'' (Emphasis added.)

As an additional reason in support of their contention with respect to the validity of the conditional sales contract, appellants argue that this constituted a ''novation'' of the preceding sales contracts. If, however, as we have held, the trial court was warranted in finding that title to the equipment passed prior to the execution of the conditional sales agreement, the fact that the latter agreement might be regarded as a novation would not serve to make it a valid contract of conditional sale. Being an invalid attempted retransfer of title to the appellants, it was inoperative and void as against creditors of the transferor and the latter's trustee in bankruptcy because not accompanied by delivery and an immediate and continued change of possession of the equipment. Thus the trial court was warranted in concluding that the purported conditional sales contract constituted only an agreement for security or a chattel mortgage.

This brings us to appellants' second contention that, so considered, it was valid as against the trustee and the respondents although neither acknowledged or recorded, because (1) each had knowledge thereof prior to the sale of the equipment by the trustee and (2) the evidence fails to disclose that there were any creditors of the bankrupt who had a lien upon the equipment or were armed with process authorizing its seizure.

It is undoubtedly true, as appellants contend, that an unrecorded mortgage is nonetheless valid as to subsequent purchasers and encumbrancers with notice thereof and likewise as to general creditors not possessing a lien upon the mortgaged property by virtue of some legal proceedings or not armed with some process authorizing the seizure of the property. (*Lemon* v. *Wolff* (1898), 121 Cal. 272, 275 [53 P. 801].) From this premise appellants argue that, while it appears that the bankrupt had creditors, it does not appear that any of these possessed a lien upon the property or were armed with process authorizing its seizure, and conclude that the trustee took it subject to appellants' mortgage. They, however, overlook the fact that by virtue of the Bankruptcy Act (11 USCA 110 (c)) a trustee in bankruptcy, as to all property of the bankrupt, is vested as of the date of bank-

ruptcy with all the rights, remedies and powers of a creditor then holding a lien thereon, whether or not such a creditor exists. Thus an unrecorded chattel mortgage executed by a bankrupt prior to bankruptcy is void as to the trustee in bankruptcy even though it does not appear that there "were creditors who had acquired a lien upon the mortgaged property by virtue of some legal proceeding or who had come armed with some process authorizing seizure of the property." (*Noyes* v. *Bank of Italy* (1929), 206 Cal. 266, 269 [274 P. 68] ; 6 Am.Jur. p. 1145, § 995.)

The Supreme Court of the United States has said that : "Claims which for want of record and for other reasons would not have been valid liens as against the claims of creditors of the bankrupt shall not be liens against his estate." *Moore* v. *Bay* (1931), 284 U.S. 4 [52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198].) For a full discussion of this question see 6 American Jurisprudence, page 1145, section 995. Thus it is clear that the purported conditional sales contract being in effect but a chattel mortgage void for want of acknowledgment and recordation, did not constitute a valid lien against the bankrupt estate, and the trustee took title to the property therein described free of any claim of lien of appellants.

Appellants further contend however, that despite the fact that the conditional sales contract was invalid as to the trustee and the bankrupt estate, the trustee, having sold the assets of the bankrupt's estate subject to liens and encumbrances thereon, the respondents, having knowledge of the existence thereof at the time they purchased the equipment in question from the trustee,[3] took title thereto subject to the appellants' lien.

It is true that the trustee sold the equipment subject to liens and encumbrances thereon, but as previously indicated, no proceedings were had in the bankruptcy court whereby the validity of any claim of liens against the bankrupt property was litigated or determined The bankruptcy court, before authorizing the sale of the bankrupt's property, was not obligated to determine the validity of any claim of ownership thereto or liens thereon. It was at liberty, as it did, to author-

[3] While the trial court did not make a finding to the effect that the respondents had knowledge of appellants' claim to the equipment at the time they purchased the same from the trustee, there was evidence to the effect that they had such knowledge and for the purposes of this discussion we shall assume that such was the case.

ize the sale subject to liens and encumbrances thereon, leaving the validity of any such to be contested between the purchaser from the trustee and the third persons asserting the same (*Schmidt* v. *Ryon* (C.A.3d, 1922), 281 F. 790.) If the trustee's title to the assets of the bankrupt's estate is good as against unrecorded liens, upon principle it would seem to follow that the title of a purchaser from the trustee would not be encumbered thereby. While there appears to be a dearth of authority upon this precise point such authorities as we have been able to discover, with a single exception hereinafter noted, support this view. Thus in Collier on Bankruptcy (14th ed.), page 1588, note 14, we find this statement:

"Unless a sale of property free from all or specific liens and encumbrances is ordered and announced [see sec. 70.97, *supra*; sec. 70.99, *infra*], the trustee sells whatever interest the bankrupt had and subject to any liens or encumbrances *not invalidated under the Act*. See sec. 70.97, *supra*, nn. 14; 14a, and text accompanying." (Emphasis added.) To the same effect: *Hinton* v. *Williams* (N.C., 1915), 170 N.C. 115 [86 S.E. 994]; *Lynch* v. *Johnson* (N.C., 1915), 170 N.C. 110 [86 S.E. 995].

In *General Motors A. Corp.* v. *Raz Delivery*, 238 App.Div. 277 [264 N.Y.Supp. 412], it is held that where the bankrupt reacquired title to property through a sale thereof by the trustee in bankruptcy, he took title thereto free of unrecorded liens thereon created prior to bankruptcy by the bankrupt which were void as to the trustee in bankruptcy.

That the purchaser of property from a trustee in bankruptcy takes title thereto free of any liens or encumbrances thereon void as to the trustee, even though such purchaser may have knowledge thereof at the time he purchases the same, would appear to be but an application of the well-settled principle of law that a bona fide purchaser may clothe his transferee with a good title regardless of whether the transferee had notice of adverse claims which were void or unenforceable against the transferor. (*March* v. *Pantaleo* (1935), 4 Cal.2d 242, 244 [48 P.2d 29]; *Jones* v. *Independent Title Co.* (1944), 23 Cal.2d 859, 861 [147 P.2d 542].) As we have seen, a trustee in bankruptcy with respect to the property of the bankrupt takes the same free and clear of any unrecorded liens thereon, and thus to all intents and purposes occupies the same position with respect thereto as a purchaser for value without notice of such unrecorded liens.

If, however, it were to be held, as appellants contend, that

despite the fact that appellants' lien was invalid as to the trustee in bankruptcy, the respondents nonetheless took title to the equipment subject to the lien because it was sold by the trustee subject to liens, it would avail the appellants naught. This is pointed out in *White* v. *Steinman* (C.A.2d, 1941), 120 F.2d 799, cert. den. 314 U.S. 659 [62 S.Ct. 113, 86 L.Ed. 528].) The facts there were these: One White sold to and installed certain equipment in the place of business of Manhattan Bakeries under a contract pursuant to which White retained title as conditional vendor. This contract was not recorded as required by the laws of New York in consequence of which it was void as to creditors of the purchaser. The purchaser, Manhattan Bakeries, defaulted in the payment of the balance of the purchase price of the equipment and was thereafter adjudicated a bankrupt. The receiver in bankruptcy took possession of the equipment and sold it to one Pearlstein subject to all liens and conditional sales contracts thereon. Pearlstein in turn transferred the property to a corporation which he caused to be organized under the name of Manhattan Bakeries. Later White, the conditional sales vendor, instituted an action in the state court against Pearlstein and his transferee to replevy the equipment. The trustee in bankruptcy thereupon filed a petition in the bankruptcy court and obtained an order staying White, Pearlstein, Manhattan Bakeries and the sheriff from taking any steps in connection with the disposition of the chattels and ordering them to show cause why the conditional sales agreement should not be held void and the lien preserved for the benefit of the bankrupt estate. Thereafter, following a hearing before the referee and the filing of his report the district court entered a decree that the conditional contract of sale was void as against the bankrupt estate but that the lien thereof was "preserved for the benefit of the estate as against" Pearlstein, the purchaser, and his transferee. In affirming the judgment upon appeal therefrom by White, the court speaking through Judge Augustus N. Hand said (p. 802) : "If the conditional title of White was invalid as against the bankrupt's creditors because of his failure to conform to the filing act, the interest in the chattels represented by his lien ought nevertheless to be preserved for the benefit of the bankrupt estate. White could not retain it because the irregular filing rendered it invalid against the bankrupt's creditors. The purchaser could not hold the chattels free from it because he had bought them subject to all liens."

And continuing at page 803:

"In spite of the clear invalidity of White's lien as against the trustee in bankruptcy, he seeks to retain its value on the ground that the receiver parted with all interest in the res even though he did not sell the interest covered by White's lien. In other words White seeks to obtain a windfall regardless of the fact that the estate never received any equivalent for it by way of purchase money. This seems to us not only inequitable, but irrational, and we hold that such value as there was in the interest of White, had his lien been valid, remains an asset of the bankrupt estate. The provision of the order whereby the 'lien is preserved for the benefit of the estate as against Nathan Pearlstein, the purchaser from the receiver, and Manhattan Bakeries, Inc.', is somewhat misleading but serves as a sufficient description of the interest retained by the trustee. Speaking accurately, what is preserved is not the lien of White but an interest in the chattels equivalent thereto which the bankruptcy court never sold."

If, contrary to what has previously been said, the rule announced in the foregoing case is accepted as correct, it would seem that it would have been to the advantage of the bankrupt estate for the trustee to apply to the bankruptcy court for leave to sell the property free of liens[4] in order to obtain the highest possible price, but the fact that he did not do so does not bear upon the instant litigation.

 Finally, appellants complain of the trial court's rulings with respect to the admissibility of evidence. The specific rulings are not precisely indicated in appellants' brief, but as we understand it they relate to the following: One of the officers of Northrup-Jones was asked if the installation of the equipment was acceptable to Northrup-Jones prior to the time that it suspended business. An objection to the question upon the ground, among others, that it called for the conclusion of the witness was sustained with the statement by the court: "You may state the facts that occurred, but don't say whether it is acceptable or not." The ruling was correct and it did not preclude evidence of any facts with reference to the manner of the operation of the equipment after its installation, with respect to which evidence was offered and received. The same witness was asked

---

[4] A trustee has no power to sell encumbered property free from liens without a special order directing such sale, (8 C.J.S., p. 1045) and only after notice and hearing. (*Id.*, p. 1043.) See to the same effect: 6 American Jurisprudence, page 1274, sections 1214, 1215.

whether any creditor of Northrup-Jones or its trustee in bankruptcy ever instituted any proceedings to set aside the conditional sales contract in question. Objections to these questions were sustained and properly so. The validity of the purported conditional sales contract was not dependent upon whether any creditor or the trustee instituted any proceedings to set it aside. Moreover, it was admitted that no such proceedings were had. ▮▮▮▮ Complaint is also made of the court's action in sustaining an objection to appellants' offer to prove that appellants did not consider the installation of the equipment by them under a contract which called for 90 days' free service as complete until the 90-day period had expired and all services had been rendered which were required to place the same in first-class working condition. This ruling was also correct. The contracts by their terms expressly required appellants to provide service for 90 days after completion of the installation and obviously their obligation to do so was not discharged until the expiration of this period. The proffered testimony would have added nothing to what was apparent from a reading of the contracts.

The judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.