[Civ. No. 526.   Fifth Dist.   Mar. 15, 1966.]

THE MORRIS PLAN COMPANY OF CALIFORNIA, Plaintiff and Respondent, v. PACIFIC FINANCE CORPORATION, Defendant and Appellant.

James C. Janjigian for Defendant and Appellant.

Meux, Gallagher, Baker & Manock and Kendall L. Manock for Plaintiff and Respondent.

BROWN (R. M.), J.—Plaintiff-respondent brought an action against defendant-appellant for the conversion of a 1960 Buick automobile. The defendant filed a cross-complaint to quiet title in itself to the automobile. Plaintiff had judgment in the sum of $4,109.98 on its complaint and judgment on the cross-complaint. The defendant appeals from the judgment and from an order denying its motion for a new trial. The order is nonappealable and the attempted appeal therefrom must be dismissed. (*Singleton* v. *Perry,* 45 Cal.2d 489, 500 [289 P.2d 794] ; *Ray* v. *Jackson,* 219 Cal.App.2d 445, 457 [33 Cal.Rptr. 339].)

The controversy here involved arose by reason of the fact that both plaintiff and defendant innocently financed an automobile dealer with the same automobile as security.

During 1960 John S. Heaton, as a sole proprietor, operated a new car dealership in Coalinga, California. The plaintiff, The Morris Plan Company of California, had previously provided financing to Heaton by discounting conditional sales contracts. The defendant, Pacific Finance Corporation, hereinafter referred to as Pacific, had floored automobiles for Heaton by trust receipt financing since 1959, and a statement of trust receipt financing had been filed with the Secretary of State on March 9, 1960.

On June 21, 1960, Heaton had in his possession an unregistered 1960 Buick Invicta which he had obtained from the Buick Motor Division without restriction as to its resale.

On that date he sold the car to his mother, Mary Heaton, on a conditional sales contract. On June 22, 1960, Heaton discounted the conditional sales contract to Morris Plan for $4,000, which company kept the contract. On June 24, 1960, Heaton arranged through John Steele, the Fresno branch manager for Pacific, to have two Buick automobiles (one of which was the 1960 Buick here involved) financed under the trust receipt method of financing. Steele contacted someone at the Buick factory and was under the impression that the Buick Company was holding both cars, although he was not sure whether the official with whom he spoke stated he was actually holding more than one car at that time. Pursuant to arrangements made by Steele with the Buick factory, Pacific delivered its check to Buick and authorized that the cars be delivered to Heaton, requiring that the invoice be sent to Pacific. The invoice issued by Buick which described the same car described in the conditional contract of sale, was dated June 22, 1960, and was stamped "paid" June 24, 1960. This invoice is designated a bill of sale and evidences a transfer of title to Heaton Buick-Pontiac Co., Coalinga, California. A dealer's report of sale and application for registration of vehicle, dated August 1, 1960, was filed with the Department of Motor Vehicles, which issued a certificate of ownership dated August 18, 1960, showing Mary H. Heaton as registered owner and Morris Plan as legal owner. On June 27, 1960, Heaton executed a trust receipt to Pacific. About December 15, 1960, Mr. Steele, Pacific's manager, called Mr. Arnold, Morris Plan's manager, and discovered that the two financing entities had each financed the same automobile and Mr. Steele arranged to have the automobile repossessed by Pacific's own action. Heaton was then in default in his payments to Pacific. After Pacific had repossessed the automobile and about January 12, 1961, the Department of Motor Vehicles issued a certificate of ownership showing Pacific as the registered owner of the automobile, which was subsequently cancelled. Payments had been made to Morris Plan pursuant to the contract prior to the repossession, with a balance of $4,109.98 remaining due. After the repossession Pacific resold the automobile and deposited the proceeds in court subject to a final judgment in this action. The trial judge determined that Morris Plan was entitled to judgment for the balance due on the conditional sales contract in the sum of $4,109.98.

On this appeal, Pacific raises three issues: (1) the trial court erred in determining that the conditional sales contract con-

veyed good title to Morris Plan; (2) Morris Plan failed to perfect its alleged title as required by the provisions of the Vehicle Code; and (3) Morris Plan's claim is based upon a forged document of title and is therefore void and the trial court's determination in this respect "is contrary to the weight of the evidence on this point."

The defendant first contends that on June 21, 1960, when Heaton sold the automobile to his mother, and on June 22, 1960, when the conditional sales contract was assigned to Morris Plan, neither the seller nor the purchaser had any title to the automobile; and neither of them obtained any title whatsoever to the same until Pacific paid Buick Motor Company on June 24, 1960. It is argued that the law is clear that a seller or transferor of personal property under a conditional sales contract can pass no greater title than he had at the time of execution thereof (*M. P. Moller, Inc.* v. *Wilson,* 8 Cal.2d 31, 34 [63 P.2d 818]); and the rule applies as against a third person who acquires his interest in a bona fide manner without knowledge of any reservation. (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 777 [8 Cal. Rptr. 448, 356 P.2d 192]; *General Motors Acceptance Corp.* v. *Gilbert,* 196 Cal.App.2d 732, 740 [17 Cal.Rptr. 35].) From this premise the defendant concludes that until the seller actually received title to the 1960 Buick, he could not lawfully transfer title to his mother nor to Morris Plan.

The true rule is that title to goods passes when the parties intend that it shall pass. In *Schuch* v. *Northrup-Jones, Inc.,* 162 Cal.App.2d 279, 285 [328 P.2d 279], the court said: "In determining when title to goods passes to the buyer the actual intention of the parties must govern where it can be ascertained, and no statutory presumption as to passing of title can arise except in those cases where the parties' intention is not manifest. (*Goldberg* v. *Southwestern Metals Corp.* (1949) 92 Cal.App.2d 819, 821 [208 P.2d 75].)"

Plaintiff points out that the only evidence before the court as to the intention of the parties was the testimony of Mr. Heaton that there were no restrictions on the sale of the Buick when it was delivered into his possession. His testimony is supported by the car invoice which shows that it was executed on June 22, 1960. the day the conditional sales contract was assigned to Morris Plan, and that the invoice was designated as a "bill of sale." Section 1739 of the California Civil Code is applicable. That section provides: "Unless a different intention appears, the following are rules for ascertaining the

intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

In *Phillips* v. *Stark,* 186 Cal. 369, at page 370 [199 P. 509], the court said: "The delivery of possession to the defendants, of course, operated to pass title, there being nothing to indicate a contrary intent." Plaintiff argues that title having vested in Heaton by delivery of the automobile to him by Buick without a reservation of title, he was then in a position to reserve the legal title to his company in the conditional sale contract with the purchaser and transfer that title to Morris Plan upon assignment of the contract. After Buick delivered possession of the automobile to Heaton and Heaton assigned his legal interest to Morris Plan on June 22, 1960, it was Buick and Heaton who were without title to convey to Pacific. Plaintiff urges that it was at this time in the sequence of events, rather than at the time of the assignment to Morris Plan, that the general rule cited by the defendant which is stated in *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d 31, 34, applies. Then, when on June 24 Buick stamped its invoice "paid" and delivered it to Pacific, Buick had no title to convey, and on June 27, when Heaton executed a trust receipt in favor of Pacific, Heaton had no title to convey. Plaintiff contends that the cases of *Crestline Mobile Homes Mfg. Co., supra,* and *General Motors Acceptance Corp., supra,* upon which the defendant relies, actually support the position of the plaintiff. Plaintiff concludes that, at the time the trust receipt was executed, neither Heaton nor Buick had any title or interest which either could convey to Pacific.

As a second string to its bow, plaintiff claims that, in any event, the defendant is estopped from asserting title as against Morris Plan. It quotes from *Commercial Credit Co.* v. *Barney Motor Co.,* 10 Cal.2d 718, at page 721 [76 P.2d 1181], as follows: "The title holder, having clothed the retail dealer with all the appearances of ownership or authority to sell, could not be heard to assert title or ownership as against a purchaser for value without actual notice of the reserved title who had been led by appearances created by the true owner to believe that the dealer had authority to dispose of the title in the usual course of trade. Under such cases the rights of

the purchaser did not necessarily depend on the actual title or authority of the dealer, but were derived from the act of the real owner, which precluded him from disputing as against an innocent party, the existence of the title or power which, through negligence or mistaken confidence, he had caused or allowed to be vested in the party making the sale.'' (See *Fowles* v. *National Bank of California,* 167 Cal. 653, 656-657 [140 P. 271] ; *Carpy* v. *Dowdell,* 115 Cal. 677, 686-687 [47 P. 695] ; *Tharp* v. *San Joaquin Valley Securities Co.,* 20 Cal. App.2d 20, 23-25 [66 P.2d 230] ; *Western States Acceptance Corp.* v. *Bank of Italy,* 104 Cal.App. 19, 22-24 [285 P. 340] ; *Pacific Finance Corp.* v. *Hendley,* 103 Cal.App. 335, 338-339 [284 P. 736] ; *Rapp* v. *Fred W. Hauger Motors Co.,* 77 Cal. App. 417, 422 [246 P. 1067] ; and *McKee* v. *Peterson,* 214 Cal. App.2d 515 [29 Cal.Rptr. 742].)

In *Mercantile Acceptance Corp.* v. *Liles Brothers Motor Co., Inc.,* 167 Cal.App.2d 779 [334 P.2d 983], the defendant, the operator of a wholesale car lot in Tennessee, sold automobiles to a California dealer. The seller sent certificates of title to a Sacramento bank with sight drafts attached, with instructions to deliver the certificates when the drafts were paid. The drafts were not paid although the cars were delivered to the California dealer. Individual purchasers bought five of the cars under conditional sales contracts which were then assigned to Mercantile Acceptance Corporation, the plaintiff, but Mercantile did not receive the certificates. It was shown that the practice in the trade was to accept assignments of conditional sales contracts without examining the evidence of title. The defendant knew that the California dealer had purchased the cars for the purpose of resale to the general public. The evidence also showed that drafts were frequently unpaid and remained in the banks for several weeks. In the meantime the cars would be sold to the public under conditional sales contracts which were then purchased or discounted by Mercantile. It was held that the defendant was estopped from asserting any prior title to tne automobiles as against Mercantile on the basis that the defendant had clothed the dealer with the apparent title and the power of disposition of the automobiles, thereby inducing the plaintiff to deal with the apparent owner. The court placed considerable emphasis on the fact that the seller had delivered the automobiles to the dealer without reservation and ''with the authority to sell and an understanding that the cars would be sold at the first opportunity'' (p. 785). This same reasoning applies in this

case where Buick delivered the automobile involved to Heaton without reservation and with authority to sell.

The defendant argues that since the plaintiff failed to perfect its title timely, pursuant to the provisions of the Vehicle Code, its title is void as against the defendant, referring in particular to the fact that the sale was allegedly made on June 21 and the contract was assigned to plaintiff on June 22, but not reported until August 1, 1960, as being first sold, and that the defendant paid Buick Motor Company on June 24th and Heaton executed the trust receipt on June 27th.

Vehicle Code section 5600 provides in part: ''No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, . . .'' until the parties have fulfilled certain requirements. It has been held that this section is not applicable unless the vehicle is registered in California under the Vehicle Code. (See *Willard H. George, Ltd.* v. *Barnett*, 65 Cal.App.2d Supp. 828 [150 P.2d 591]; *Siegel* v. *Bayless*, 113 Cal.App.2d 661, 664 [248 P.2d 968]; and *McKee* v. *Peterson, supra,* 214 Cal.App.2d 515, 526.) ▪ The delay in registering the automobile did not prejudice the defendant. Assuming that on June 22, 1960, when Morris Plan discounted the conditional sales contract, Heaton had promptly mailed the necessary documents to register the automobile with the Department of Motor Vehicles, it would show Morris Plan as the legal owner. Registration could not have been completed to place Pacific on notice by June 24, 1960, when it paid Buick Motor Company for the automobile.

The failure to properly report the sale of the automobile under the California registration requirements, in addition to the rule set forth above, did not affect the plaintiff's title. In *Henry* v. *General Forming, Ltd.,* 33 Cal.2d 223, at page 226 [200 P.2d 785], the court stated: ''But it does not follow that the violation has the consequence claimed by the plaintiff. In no case relied on has it been so held. On the contrary similar assumed violations of the Vehicle Code have never been deemed to affect the actual property interest in the vehicle where it was necessary in pertinent proceedings to determine the issues of title and right of possession. . . .

''. . . The code provisions do not aim at tainting with illegality the sale and purchase of an automobile which is the only contract or transaction involved.''

▪ The defendant argues that the plaintiff was legally chargeable with constructive notice of the defendant's trust

receipt financing of Heaton because of the statement of trust receipt financing filed with the Secretary of State. However, this statement, filed under the Uniform Trust Receipts Act (Civ. Code, § 3012 et seq.) is merely notice of an intention to engage in trust receipt financing.

In *Citizens Nat. Trust & Sav. Bank of Los Angeles* v. *Beverly Finance Co.,* 127 Cal.App.2d Supp. 835 [273 P.2d 714], there is a comprehensive discussion of the Uniform Trust Receipts Act, and at pages 839-840, the court quotes the material portion of section 3016.5 of the Civil Code, as follows: " '. . . (a) Nothing in this chapter shall limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest; and filing under this chapter shall not be deemed to constitute notice of the entruster's interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.

" '(b) The entrusting (directly, by agent, or through the intervention of a third person) of goods, documents or instruments by an entruster to a trustee, under a trust receipt transaction or a transaction falling within section 3015 of this chapter [shall] be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value.' "

At pages 841-842, the court in *Citizens Bank, supra,* quotes from the case of *Canandaigua Nat. Bank & Trust Co.* v. *Commercial Credit Corp.,* 204 Misc. 946 [126 N.Y.S.2d 316, at page 320], as follows: " 'It is the common practice for banks and finance companies to finance the retail sale of automobiles by taking assignments from the dealer of conditional sales contracts and notes. This was the practice of the plaintiff in the present case. Such contracts and notes in the form here used are purchased and sold as if negotiable, and the plaintiff acquired the same in the customary manner and in the ordinary course of business in good faith and for value, and it comes within the protection of Personal Property Law, § 58-a, subd. 1, and holds its title free from the entruster's interest.' "

The trial court in the present case in its memorandum opinion stated: "In the instant case, Heaton was permitted to take the Buick, place it in his showroom for sale and sell it in the ordinary course of business. This is implicit in the nature of the proceedings outlined in the Uniform Trust Receipts Law. The Act specifically excepts and protects people who deal with such dealer for value and without notice, except in particular cases not applicable here. Under the present Act it appears that this is a calculated risk taken by the entruster in such transactions. If the entruster is to be preferred, the Act should be amended to compel the financing agency dealing with contracts to require evidence of title of the subject of the contract."

Under subdivision (2)(c) of section 3016.5 of the Civil Code, the liberty of sale is granted where the purchaser from the trustee is not protected under subdivision (1) of section 3016.5.

Assuming that the entruster in this case, Pacific, had this Buick car under an actual trust receipt at the time when Mrs. Heaton bought the car, we believe that Morris Plan, which was actually financing Mrs. Heaton's purchase of the car, obtained title to the car under the following mentioned sections of the Uniform Trust Receipts Act. Mr. Heaton took possession of the car under section 3016.3, subdivision (1)(a) and (b). This liberty is granted where the entruster consents to the placing of goods subject to a trust receipt transaction in the trustee's stock-in-trade or in his sales or exhibition rooms. Civil Code section 3016.2 refers to a repossession, and subdivision (3)(c) thereof provides that "A purchaser in good faith and for value from an entruster in possession takes free of the trustee's interest, even in a case in which the entruster is liable to the trustee for conversion."

The appellant contends that the trial court erred in not accepting the opinion of an expert produced by the defense whose testimony was that Mrs. Heaton's signatures were forgeries. In addition to the testimony by Mr. Heaton that Mrs. Heaton, his mother, had signed the documents in his presence, Mrs. Heaton also testified that she had signed the documents, that she had broken her wrist some years ago and had difficulty in writing but she did remember signing the application for registration and the certificate of registration and that the signatures thereon were hers. The evidence was therefore in conflict, and the evidence which supports the judgment rather than defeats it must be accepted.

(*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157] ; *Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557] ; *Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231].)

Code of Civil Procedure section 1870 provides: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts:

"  .   .   .   .   .   .   .   .   .   .   .   .

"9. The opinion of a witness respecting the identity or handwriting of a person, when he has knowledge of the person or handwriting; . . ."

The court resolved the conflict in the evidence in favor of the plaintiff, as it had a right to do.

The purported appeal from the order denying a new trial is dismissed; the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.