**In the Matter of DENNIS MITCHELL INDUSTRIES, INC., Bankrupt.**
**Cause No. 29459.**

United States District Court
E. D. Pennsylvania.

Feb. 15, 1968.

Benjamin A. Katz and Barnie F. Winkelman, Philadelphia, Pa., for reclaimant.

Morton Newman, Philadelphia, Pa., for A. J. Armstrong Co.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

This case comes before this Court on appeal from an Order of the Honorable Thomas J. Curtin, Referee in Bankruptcy, of October 25, 1967 granting Herman Schwabe, Inc.'s Petition for Reclamation. The Reclamation covered two (2) Hydraulic Cutting Machines with their accompanying equipment sold subject to any liens by the Receiver for the Bankrupt—Dennis Mitchell Industries, Inc. to A. J. Armstrong Co., Inc. The petition was filed on April 18, 1967.

The facts as found by the learned Referee are as follows: On or about May 20, 1965, Herman Schwabe, Inc. ("Schwabe") sold to the bankrupt, pursuant to a conditional sales contract the two machines in question. Financing statements were filed—both in Harrisburg, Pennsylvania in the Office of the Secretary of the Commonwealth, and in Philadelphia in the Prothonotary's office, the bankrupt's principal place of business. The conditional contract of sale provided, inter alia, that the machines were to be kept in Philadelphia and not elsewhere without Schwabe's prior consent in writing. However, without the knowledge or consent of Schwabe, the machinery was installed, not in Philadelphia, but in New Jersey. Schwabe failed to record his security interest in that state.

Subsequently, on April 5, 1967, Dennis Mitchell was adjudicated a bankrupt. On June 9, 1967 the Receivers for the bankrupt were granted leave to sell their right, title and interest in all bankrupt's assets, except cash, subject to liens and other claims to Armstrong. Included in the bankruptcy sale was Schwabe's machinery.

A question presented is: the machinery being in New Jersey, does Schwabe's failure to file there cause its security interest to be unperfected? If such is the case then, is Schwabe's "unperfected security interest" subordinate to the interest of the assignee—Armstrong?

It is the opinion of this Court that the decision of the Referee in Bankruptcy be affirmed for the reasons stated therein and for the following additional reasons:

1. Assuming, without conceding, that Schwabe's failure to file in New Jersey rendered its security interest in the machinery unperfected, it then follows that its interest was subordinate to the rights of the Receiver (later Trustee).

Section 9–301(1) (b) of the Uniform Commercial Code provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. Subsection (3) defines a lien creditor as including a trustee in bankruptcy not having knowledge of the security interest. Unless all the creditors whom he represents have knowledge of the security interest, the trustee is a lien creditor without knowledge even though he personally has knowledge of the security interest.

Thus an unperfected security interest is subordinate to the rights of a trustee in bankruptcy who personally has knowledge of the security interest, but who represents creditors not sharing this knowledge. The sole issue is does one taking under this trustee prevail over the

unperfected security interest, as would the trustee, if he, himself, has knowledge of the security interest? We think not.

A sale in a bankruptcy proceeding is a judicial sale. In re Superior Mushroom Growers Corp., 228 F.Supp. 372 (E.D.Pa.1964). Under a judicial sale, a purchaser takes title free from liens or outstanding interests of which he was without actual or constructive notice. Follweiler v. Lutz, 102 Pa. 585 (1883).

There is authority for the view that a purchaser of property from a trustee in bankruptcy takes title thereto free of any unrecorded liens or encumbrances subordinate to the right of the trustee, even though such purchaser has actual knowledge of the same at the time of purchase. Schuch v. Northrup-Jones, Inc., 162 Cal.App.2d 279, 328 P.2d 279 (1958). We do not subscribe to this view. As stated in the *Schuch* case the rule there is but an application of the principle that a bona fide purchaser "may clothe his transferee with a good title regardless of whether the transferee had notice of adverse claims which were void or unenforceable against the transferor." Id., at 284, 328 P.2d at 286. See also U. C.C. 2–403(1).

It is submitted that the "shelter" provision of U.C.C. 2–403(1) does not apply to a transferor-transferee relationship arising out of a judicial sale. Indeed, as one commentator has written, when the nature of the sale makes another provision of the Code applicable, such other provision should determine the rights of the purchaser. Anderson, Uniform Commercial Code, 2:403:7 (1961). Accordingly, the rights of a purchaser at a judicial sale should be governed by Article 9 on Secured Transactions and not 2–403(1).

Thus, the better view is that a purchaser at a bankruptcy sale takes title free from liens or other outstanding interests *only of which* he was without actual or constructive notice. Since in the instant case, Armstrong had actual notice of Schwabe's unrecorded security interest, it is precluded from taking title to the equipment free of the lien.

2. In the alternative, this Court holds that Schwabe's interest was indeed perfected as required by law for the following reasons:

Schwabe filed its security interest in Pennsylvania, relying on Mitchell's promise that the equipment, now the subject of reclamation, would be located in Philadelphia. Mitchell breached its contractual promise to locate the equipment in Philadelphia and secretly transported the equipment to its Woodbridge, New Jersey plant instead. Armstrong argues that Schwabe had to file its security interest in New Jersey and that the filing in Pennsylvania, under the Pennsylvania Uniform Commercial Code, is without legal effect. Armstrong's argument hinges on section 9–102(1) of the Pennsylvania Uniform Commercial Code, which, in relevant part, provides:

> *Except as otherwise provided in Section 9–103 on multiple state transactions* * * * this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this State * * *. [Emphasis supplied.] 12A P.S. § 9–102(1).

Armstrong contends that as the equipment was not located within the jurisdiction of the Commonwealth of Pennsylvania, a filing of a security interest under the Pennsylvania U.C.C. is a nullity. This argument is not supportable, in light of the clear language of section 9–102(1) indicating that in certain multiple state transactions section 9–103 controls. This Court concludes that Schwabe has done everything necessary to perfect its security interest, in Pennsylvania, under the terms of section 9–103 of the Pennsylvania U.C.C.

Section 9–103, in relevant part, provides:

(2) If the chief place of business of a debtor is in this state, this Article governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one jurisdiction

(such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) if such goods are classified as equipment * * *. 12A P.S. § 9–103.

Under the facts of this case, particularly the fraudulent transportation of the equipment to New Jersey instead of Pennsylvania, this Court will not give section 9–103 a narrow construction so as to exclude the equipment, now subject to reclamation, from coverage under section 9–103. Such construction is justified for a dual reason: (1) the U.C.C. itself provides for liberal construction of its provisions in order that the remedies of the Act will be administered to the end that an aggrieved party be put in as good a position as if the other party had performed clearly assumed obligations, 12A P.S. § 1–106(1); and (2) Mitchell had attested to the mobility of the equipment by not only contracting to take it to Philadelphia, but by transporting it, instead, to another plant located in New Jersey. Neither Mitchell nor Armstrong should now be permitted to argue that the equipment was not mobile and thus not covered by section 9–103 of the Pennsylvania U.C.C. Inasmuch as Schwabe's security interest was perfected under section 9–103 prior to the filing of the petition of bankruptcy, Schwabe's title is superior to that of the trustee in bankruptcy and such cases as In re Kravitz, 278 F.2d 820 (3rd Cir. 1960) are clearly distinguishable.

Finally, there is ample evidence that Mitchell's "chief place of business is in this state", that is Pennsylvania, for Referee Curtin concluded that Mitchell had its principal place of business in Philadelphia—thus clearly indicating that Schwabe had fully conformed with the jurisdictional requirements of section 9–103 of the Pennsylvania U.C.C.

### ORDER

And now, to wit, this 15th day of February, A.D.1968, it is ordered that the Order of the Referee in Bankruptcy In the Matter of Dennis Mitchell Industries, Inc., be and the same is hereby affirmed.

And it is so ordered.