LAUERMAN BROTHERS COMPANY, Appellant, vs. RIEHL, Garnishee, Respondent.

*January 15—February 3, 1914.*

*Fraudulent conveyances: Conditional sales: Chattel mortgages: Stock in trade: Filing statements: Assignment of book accounts.*

1. So far as the rights of creditors are concerned, an agreement by which a stock of merchandise is transferred upon deferred payments, with the provision that the business shall be continued, the stock kept up by new purchases, and the vendor

have the title of the entire stock, including the additions, as security for the purchase price, is in legal effect a chattel mortgage and is governed by the provisions of sec. 2316*b*, Stats., notwithstanding the parties have called it an agreement of conditional sale.

2. Words merely indicating an intention to make a transfer of book accounts at some future time, unaccompanied by delivery of the books or the accounts or by any other act indicating an intention to relinquish control over the accounts or pass the title to the alleged assignee, did not constitute a valid assignment as against creditors of the assignor.

APPEAL from a judgment of the municipal court of Outagamie county: HENRY KREISS, County Judge and Acting Municipal Judge. *Reversed.*

The plaintiff sued Komp, a general merchant at Black Creek, Wisconsin, and garnished *Riehl.* Judgment was rendered against Komp on the main action for $416.73 and costs. The garnishee action was tried by the court, and the following facts appeared: *Riehl* originally owned the business afterwards conducted by Komp and transferred the same to Komp in December, 1911, under a conditional or executory contract of some nature, which is not in evidence and which provided for payment of the consideration in the future. This contract was never filed, but Komp took possession of the stock and conducted the business until July 9, 1912, when the parties entered into a new arrangement which took the place of the former, and which is claimed by the plaintiff to be a chattel mortgage, and by the garnishee to be an agreement of conditional sale.

This agreement, after stating the property transferred, the amount of the consideration, and the manner in which payment was to be made in the future, proceeded as follows:

"Second party agrees to furnish first party a true written statement every three months from the date hereof, of the amount of stock sold and amount purchased and added to the stock and also the amount of outstanding indebtedness against added stock for purchase price.

"Party of the second part agrees to keep the stock up in

proper shape by purchases of new stock so that the stock shall be at all times merchantable stock, pay for the same, and keep party of the first part secure.

"Party of the second part agrees to keep the stock insured in a good insurance company to be named by party of the first part in the sum of $4,500 and pay the premium with loss, if any, payable to party of the first part, and in the event of second party failing to insure, party of the first part may insure and charge the amount against the purchase price.

"Party of the first part agrees not to engage in the shoe or gent's furnishing business in Black Creek or vicinity during the term of this contract.

"It is mutually agreed and understood that this is and shall be considered a conditional sale, that the title to this property and all additions thereto during the life of this agreement, and until the full purchase price has been paid, is and shall remain in party of the first part, and upon the failure of the party of the second part to fully carry out any of the agreements and conditions herein, or at any time party of the second part deems himself insecure, he may take unquestioned possession of the stock in any manner he may choose."

This contract was duly filed in the office of the village clerk, but no statements of sales were ever filed. Komp conducted the business until November 11, 1912, when he absconded and the respondent, *Riehl,* took possession of the stock and the accounts. Prior to the trial of the garnishment action *Riehl* had collected $280 on the accounts, and had uncollected accounts still in his possession, but which were collectible, amounting to $150 in value. The garnishee does not claim that Komp at any time delivered to him the accounts or the books of account with words of present assignment or transfer, but simply that Komp said to him at one time when he (*Riehl*) told him (Komp) that he was selling more than he was buying, "I don't want to beat you in any way; I want to deal fair and square and honest, and I will turn over the book account, which you can hold;" and at another time, "It is certain we have to carry people here on account; the amount

the stock is down will be on the book account, and I want you to have that for security." Komp's sales from July until December, 1912, averaged about $650 per month. The amount of his purchases does not appear, but it is certain that there were during that time considerable quantities of new goods purchased and added to the stock, for the total amount of stock was not greatly reduced during that time. Among such goods were the goods of the plaintiff, for which the main action was brought.

The trial court found that the conditional sales agreement was valid, that the accounts were duly assigned to *Riehl* for value, that *Riehl* was not liable as garnishee, and dismissed the garnishment proceedings. From this judgment the plaintiff appeals.

For the appellant there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *L. D. Jaseph.*

*Francis S. Bradford,* for the respondent.

Winslow, C. J.   In this case it is held:

1. So far as the rights of creditors are concerned, an agreement by which a stock of merchandise is transferred upon deferred payments, with the provision that the business shall be continued, the stock kept up by new purchases, and the vendor have the title of the entire stock, including the additions, as security for the purchase price, must be held to be in legal effect a chattel mortgage, notwithstanding the parties have called it an agreement of conditional sale; otherwise the provisions of sec. 2316*b,* Stats. 1911, might be nullified by the parties to every such transaction by simply calling the instrument an agreement of conditional sale.

2. No statement of the amount of sales made from the stock, the amount paid on the mortgage debt, and the valuation of the stock added, having ever been filed by the mort-

gagor in this case, as is required by sec. 2316b, Stats. 1911, to be done every sixty days from the date of the instrument, the lien of the mortgagee ceased as to creditors before the commencement of this action.

3. There was no valid assignment of the accounts in this case because the words relied upon were not words of present transfer, but merely words indicating an intention to make a transfer at some future time, and were unaccompanied by the delivery of the books or the accounts, or any other act indicating an intention to relinquish the control over the accounts or pass the title to the garnishee. *Chapman v. Plummer,* 36 Wis. 262.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment against the garnishee in accordance with this opinion.