[Civ. No. 22792.   First Dist., Div. One.   May 25, 1966.]

WILLIAM B. GROVER, Plaintiff and Appellant v. MAURICE W. TINDALL et al., Defendants and Respondents.

Frederick L. Hilger for Plaintiff and Appellant.

Leo M. Cook for Defendants and Respondents.

MOLINARI, J.—Plaintiff, who brought this action as the trustee in bankruptcy of Carl W. Rynearson against defendants, Maurice and Alice Tindall, to recover on behalf of Rynearson's creditors certain goods (or the value thereof) allegedly transferred to defendants by Rynearson in fraud of his creditors, appeals from the judgment in favor of defendants.

The complaint in the instant action, after reciting that Rynearson had been adjudged a bankrupt and that plaintiff was the duly qualified and acting trustee in bankruptcy possessing the rights of any and all of Rynearson's creditors, alleged that since the transfer by Rynearson to defendants of certain property was not advertised or noticed pursuant to the provisions of Civil Code section 3440[1] such transfer was fraudulent as to the creditors represented by plaintiff, and that by such transfer plaintiff and the creditors were damaged in the amount of $8,000, this being the alleged value of the transferred property.[2]

---

[1]Unless otherwise indicated all statutory references are to the Civil Code.

[2]Section 3440 provided as follows: ''Every transfer of personal property and every lien on personal property made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued

The cause was submitted to the trial court on a stipulation of facts as follows: On August 31, 1960 defendants, who owned Tindall's Market in Boonville, California, and who leased this market to Rynearson and his wife (hereinafter referred to as Rynearson), entered into a written agreement with Rynearson by which the latter agreed to purchase the stock-in-trade of this market from defendants. The agreement provided that the purchase price of the inventory, to be represented by a promissory note, was $7,000 payable at the rate of $200 or more per month with interest on unpaid principal at the rate of 7½ percent per annum, payable monthly. In addition the agreement contained the following provisions: "2. Purchasers shall have the right to sell said stock in trade in the regular course of business to retail customers for cash, and for credit to such persons or companys [*sic*] as are approved by sellers, however title to the said stock in trade shall remain in sellers until the full purchase price is paid. 3. Purchasers agree to keep the said stock in trade at its approximate level as of July 1, 1960, and agree that title to all items purchased by them shall vest in owners until the full purchase price as specified herein has been paid."[3] In July 1961, Rynearson having defaulted under the agreement with defendants, defendants repossessed the store, including the stock-in-trade, which, as of that date had a value of $4,357.19. At the time defendants repossessed the subject property, which repossession was accomplished without advertising or giving notice under the provisions of section 3440.1,[4] various creditors of

change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while he remains in possession and the successors in interest of those creditors, and as against any person on whom the transferor's estate devolves in trust for the benefit of others than the transferor and as against purchasers or encumbrancers in good faith subsequent to the transfer.''

[3]Neither the stipulation of facts nor anything in the record indicates whether this agreement was recorded. In view of the statement in plaintiff's brief that it was not recorded and the failure of defendants to deny this assertion in their reply brief, we may assume that such was the fact.

[4]Section 3440.1 in pertinent part provided as follows: ''The sale, transfer or assignment of a stock in trade, in bulk, or a substantial part thereof, other than in the ordinary course of trade and in the regular and usual practice and method of business of the vendor, transferor, or assignor, . . . is conclusively presumed fraudulent and void as against the existing creditors of the vendor, transferor, assignor, or mortgagor, unless before the consummation of the sale, transfer, assignment, or mortgage, the vendor, transferor, assignor, or mortgagor, or the intended vendee, transferee, assignee, or mortgagee does all of the following: . . . [here follows a procedure for giving notice of the transfer].''

Rynearson who had furnished items of inventory to him and who had not been paid for these items, possessed claims against Rynearson in excess of $4,357.19.

The trial court found that the contract entered into between Rynearson and defendants was a conditional sales contract reserving title; that defendants repossessed under this contract; and that section 3440.1 did not apply to the transaction. Accordingly, the trial court entered judgment in favor of defendants.

It should be here noted that the trial court made no determination as to whether any transfer was made in violation of section 3440 as alleged in plaintiff's complaint. A review of the record discloses an ambivalence on plaintiff's part as to whether he was relying on section 3440 or section 3440.1 as the basis for his cause of action. Although his complaint alleged that the transfer complained of was in violation of section 3440, plaintiff, by letter, advised the trial court while it had defendants' demurrer to the complaint under consideration that plaintiff was "proceeding under Section 3440.1. . . ." However, the complaint was never amended so as to allege a transfer in fraud of creditors under section 3440.1.[5] The record discloses, moreover, that although the sole statutory reference in the stipulation of facts was to section 3440.1, plaintiff, in his memoranda of points and authorities filed in the trial court,[6] based his right to relief on section 3440 rather than section 3440.1. As to the posture of this case on appeal, although plaintiff indicates in his closing brief that he is relying on both sections 3440 and 3440.1, in his opening brief he refers only to section 3440.1, asserting that "The question herein presented for review is limited to the very narrow question: Can a vendor in a conditional sales contract reserve title to himself covering after-acquired merchandise to be acquired by his buyer from other vendors so as to cut off the claim of the other unpaid vendors where there is no recording of the conditional sales contract, and no compliance with CC § 3440.1?" In addition, defendants in their reply brief argue only the applicability of section 3440.1 upon the basis, as therein stated, that in view of plaintiff's aforementioned letter to the trial judge that he was relying on section 3440.1 the case was tried on that theory.

---

[5] The demurrer was overruled.

[6] No pretrial conference was held pursuant to rule 221 of the California Rules of Court in view of the statement in the memorandum to set cause for trial that the time estimated for trial was less than one day.

In view of the foregoing it appears that this case was tried on the theory that Rynearson made a transfer to defendants in violation of section 3440.1. While plaintiff makes the broad assertion in his closing brief that "We seek to set aside a transfer or the creation of a lien in violation of . . . Section 3440 and Section 3440.1," he has not on this appeal argued or furnished authorities in support of the contention that a transfer was made in violation of section 3440. Under the circumstances we are entitled to assume that plaintiff has abandoned this contention and that this issue, which was urged by him in the court below, is not an issue on this appeal.[7] (*Rich* v. *State Board of Optometry*, 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512] ; *Blackman* v. *Kristovich*, 216 Cal. App.2d 792, 795 [31 Cal.Rptr. 413] ; *People* v. *Scott*, 24 Cal.2d 774, 783 [151 P.2d 517].)

. Another indication of ambivalence on plaintiff's part appears in the position taken by him as to the transfer which he claims to be in fraud of creditors. In his complaint plaintiff alleged that the fraudulent transfer consisted of the repossession by defendants of the stock-in-trade after Rynearson's default in July 1961. Plaintiff reiterates this contention both in his memoranda of points and authorities submitted to the trial court and in his briefs on appeal. Yet, in these memoranda and briefs he seems to be making another contention, namely, that the transfer by Rynearson to defendants of a security interest in items of inventory acquired by Rynearson after the execution of the conditional sales contract—these transfers having been made pursuant to paragraph 3 of the subject contract—were fraudulent. Plaintiff sometimes states this issue in another way, namely, in terms of the effectiveness in an unrecorded conditional sales contract of a provision vesting title in the conditional vendor to all items of inventory subsequently acquired by the conditional vendee. Defendants urge that plaintiff has raised this issue for the first time on appeal and that therefore it should not be considered by us. However, while plaintiff's contention in this regard does appear to be a change in his theory or basis of recovery from that alleged in his complaint, since he did raise this issue in his memoranda in the trial court, we are entitled to consider

[7]Since the applicability of section 3440 was raised on this appeal for the first time in plaintiff's closing brief it would be manifestly unfair to defendants for us to consider this contention, because, in view of the stipulation entered into between the parties waiving oral argument, defendants have not been afforded an opportunity to reply to this contention.

it on appeal. (See *Byrd* v. *Savage,* 219 Cal.App.2d 396, 399 [32 Cal.Rptr. 881] ; *Auer* v. *Frank,* 227 Cal.App.2d 396, 405 [38 Cal.Rptr. 684] ; *People* ex rel. *Dept. of Pub. Works* v. *Lagiss,* 223 Cal.App.2d 23, 37 [35 Cal.Rptr. 554] ; *Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803].) ▮ Moreover, it is well settled that a change in theory is permitted on appeal when a question of law only is presented by the facts appearing in the record. (*Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534] ; *Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738] ; *Byrd* v. *Savage, supra,* p. 399.) In the instant case, as will appear from the discussion which is to follow, the question of defendants' right to repossess the stock-in-trade from Rynearson is a legal one and interdependent with that of defendants' rights under the conditional sales agreement with regard to both the property sold by defendants to Rynearson thereunder and the property subsequently acquired by Rynearson from other vendors.

Before proceeding to an analysis of the applicable principles it should be noted that plaintiff expressly concedes that a valid conditional sales contract can be created covering the stock-in-trade of a merchant when such stock-in-trade is purchased in bulk from a seller who retains title to the specific items therein as security. This concession conforms to the general principle that such a transaction is valid as between the conditional seller and conditional buyer. (See *Pacific Finance Corp.* v. *Hendley,* 103 Cal.App. 335, 338 [284 P. 736] ; 43 Cal.Jur.2d, Sales, § 322, p. 448.) ▮ Where, however, the personal property is delivered under a conditional sales contract to a buyer who is in the business of selling property of the same kind, and with the knowledge of the seller the property thus delivered is placed on display for sale with such other property, the holder of the reserved title is estopped to assert his title against a bona fide subvendee for value. (*Pacific Finance Corp.* v. *Hendley, supra,* p. 338; *Democrat-Herald Pub. Co.* v. *Pettit,* 94 Cal.App. 724, 728 [271 P. 910] ; 43 Cal.Jur.2d, *supra*) ▮ This rule is particularly applicable where, as in the instant case, the seller expressly authorizes a resale of the property. (*General Secur. Corp.* v. *Reo Motor Car Co.,* 91 Cal.App. 16, 20-21 [266 P. 576] ; *General Secur. Corp.* v. *Reo Motor Car Co.,* 91 Cal.App. 22, 25 [266 P. 579] ; *Anglo-California Trust Co* v. *Pacific Acceptance Corp.,* 70 Cal.App. 41, 45-46 [232 P. 489] ; see *Asp* v. *Lowry,* 117 Cal.App.2d 81, 85 [254 P.2d 967] ; 43 Cal.Jur.2d, *supra.*)

We note, further, that it is also expressly conceded by plain-

tiff that a conditional sales contract in order to be valid and enforceable against the *creditors* of the buyer requires no recordation, and that repossession to the extent of the items as to which title was reserved does not require publication and notice under section 3440.1.

Since a determination of the nature of the contract entered into between defendants and Rynearson is essential to a resolution of the rights between plaintiff and defendants, we first consider the essential requirements of a conditional sales contract. These requirements are: (1) that there be a sale of property to the buyer with possession of the property sold passing to the buyer, and (2) that the seller retain title to the property sold until the buyer has fully performed all conditions contained in the contract, including payment of the purchase price. (*Putnam* v. *Lamphier*, 36 Cal. 151; *Van Allen* v. *Francis*, 123 Cal. 474 [56 P. 339]; *Walker* v. *Houston*, 215 Cal. 742 [12 P.2d 952, 87 A.L.R. 937]; § 2981; 1 Witkin, Summary of Cal. Law (1960) Sales, § 45, p. 526; 78 C.J.S., Sales, §§ 553, 554, pp. 254, 255; see also 8 Words and Phrases, pp. 670-673.) In the light of these definitions it is clear, and it is conceded by both parties to this litigation, that the transaction by which defendants sold *their* stock-in-trade to Rynearson, retaining title thereto until payment of the purchase price by Rynearson, constituted a conditional sale and that the contract embodying this transaction constituted a conditional sales contract. We are unable, however, to reconcile with the concept of a conditional sale the provisions of paragraph 3 of the subject contract providing for the vesting in defendants of title to all items thereafter purchased by Rynearson as security for the purchase price of the stock-in-trade sold to him by defendants. According to this provision defendants were to obtain title to stock-in-trade acquired by Rynearson after the execution of the contract even though such goods were acquired from persons other than defendants. Considering this provision in light of the definition of a conditional sale, we note that the two essential elements of a conditional sale transaction appear to be absent in the future transactions contemplated by paragraph 3 of the contract. Firstly, the property which is the subject of this provision is not the subject of a sale from defendants to Rynearson, and secondly, the transaction which this provision contemplates does not involve a *retention* of title in defendants as to these goods which defendants never owned nor sold to Rynearson. We are accordingly convinced that the transactions contem-

plated by paragraph 3 of the subject contract are foreign to the nature of a conditional sale. ■ Rather, it would appear that this provision is in effect an agreement by Rynearson to subject after-acquired stock-in-trade to a chattel mortgage in favor of defendants. In support of this conclusion we note the cases of *Lauerman Bros Co.* v. *Komp,* 156 Wis. 12 [145 N.W. 174], and *Schuch* v. *Northrup-Jones, Inc.,* 162 Cal. App.2d 279 [328 P.2d 279].

In *Lauerman* the Supreme Court of Wisconsin was confronted with a contract almost identical to that involved in the instant case. Under that contract one Riehl agreed to sell his business, including the stock-in-trade thereof, to Komp. The agreement, after stating the property transferred, the amount of the consideration, and the manner in which payment was to be made by Komp, provided as follows: " 'Party of the second part [Komp] agrees to keep the stock up in proper shape by purchases of new stock, so that the stock shall be at all times merchantable stock, pay for the same, and keep party of the first part [Riehl] secure. . . . It is mutually agreed and understood that this is and shall be considered a conditional sale; that the title to this property and all additions thereto during the life of this agreement, and until the full purchase price has been paid, is and shall remain in party of the first part; and upon the failure of the party of the second part to fully carry out any of the agreements and conditions herein, or at any time party of the second part deems himself insecure, he may take unquestioned possession of the stock in any manner he may choose.' " (P. 175.) The reviewing court held that as between the plaintiff (a creditor of Komp) and Riehl, who had repossessed the stock, the agreement, despite its label as a conditional sales contract, was in legal effect a chattel mortgage, which, since it had not been properly perfected under Wisconsin law, was invalid as against the creditors of Komp.

In the *Schuch* case, the plaintiffs, pursuant to two agreements with the defendant Northrup-Jones, Inc., furnished certain air-conditioning and refrigeration equipment to Northrup. Neither of these agreements contained a provision reserving title to the equipment in the plaintiffs. Following delivery and installation of this equipment and payment by Northrup of a portion of the purchase price, Northrup advised the plaintiffs that it was unable to pay the balance due under the two contracts. Accordingly, at the suggestion of one of the plaintiffs, the parties executed a written agreement in the

form of a conditional sales contract. This agreement recited that the plaintiffs sold and Northrup purchased the equipment covered by and described in the two previously executed contracts for a total specified sum, less the amount previously paid by Northrup; that the balance due was to be paid in monthly installments; and that title to the property was not to pass to the purchaser until all sums due under the contract were fully paid. This contract was neither acknowledged nor recorded and there was no change of possession of the subject equipment at the time of or following the execution of the agreement. Northrup was subsequently adjudicated a bankrupt and the trustee in bankruptcy took possession of the equipment and sold it to the defendants Kaplan, this sale having been confirmed by the bankruptcy court. Based upon these facts the plaintiffs brought suit to recover the equipment which they claimed title to under the purported conditional sales contract. In upholding the judgment of the trial court in favor of the defendants, the appellate court concluded, as did the trial court, that the purported conditional sales contract was in legal effect a chattel mortgage. This conclusion was based upon the rationale that the attempted retransfer of title to plaintiffs was void as against creditors of Northrup because it was not accompanied by delivery and an immediate and continued change of possession of the equipment.

We conclude therefore that in the instant case the provision in the subject contract by which defendants attempted to obtain title to stock-in-trade acquired by Rynearson after the execution of this contract is not the proper subject of a conditional sales agreement and is rather an attempt by the contracting parties to create a mortgage in favor of defendants as to these after-acquired goods. We proceed accordingly to discuss the validity of this attempted mortgage as against Rynearson's creditors, this discussion being based on the relevant Civil Code provisions in effect at the time this agreement was executed.[8] ██ Although section 2883 specifically permits the creation of a lien upon property which the mortgagor has not acquired at the time of executing the mortgage,[9]

---

[8]Most of these statutes were repealed in 1965 and replaced by provisions in the Commercial Code.

[9]Section 2883, which has not been repealed, provides as follows: ''An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing, to the extent of such interest.''

section 2955 in effect at the time of the subject transactions provided that the stock-in-trade of a merchant could not be mortgaged.[10] (*National Bank of Bakersfield* v. *Moore,* 247 F. 913; *Woodruff* v. *Laugharn,* 50 F.2d 532.) This section, however, must be read in conjunction with section 2973[11] which provided that mortgages not made in conformity with the provisions of the article providing for mortgages of personal property (§§ 2955 to 2978 inclusive) were valid as between the parties to the mortgage and as to all other persons except creditors of the mortgagor and subsequent purchasers in good faith and for value. (*In re Grainger,* 160 F. 69, 72; see *Perkins* v. *Maier & Zobelein Brewery,* 133 Cal. 496, 498 [65 P. 1030].) Accordingly, in the instant case the agreement between defendants and Rynearson was valid as a mortgage of after-acquired property as between them, but not as against Rynearson's creditors. ■ We note, further, that even if a mortgage of stock-in-trade could have been made so as to be good against Rynearson's creditors, the instant agreement would nevertheless have been invalid as to such creditors because it was not acknowledged and recorded as provided in section 2957.[12]

■ Apropos the invalidity of the agreement insofar as it purported to be a chattel mortgage of after-acquired stock-in-trade, plaintiff, as a trustee in bankruptcy, was not subject to the rule that a mortgagor's creditors cannot attack a defective mortgage unless they first obtain a lien either by attachment or execution. (See *Lemon* v. *Wolff,* 121 Cal. 272, 275 [53 P.

[10]Section 2955, before its repeal, provided in pertinent part as follows: "Mortgages may be made upon all growing crops, including grapes and fruit, and upon any and all kinds of personal property, except the following: 1. Personal property not capable of manual delivery; 2. Articles of wearing apparel and personal adornment; 3. The stock in trade of a merchant."

[11]Section 2973 formerly provided as follows: "Mortgages of personal property, other than that mentioned in section twenty-nine hundred and fifty-five, and mortgages not made in conformity with the provisions of this article, are nevertheless valid between the parties, their heirs, legatees, and personal representatives, and persons who, before parting with value, have actual notice thereof."

[12]Section 2957 formerly provided in pertinent part as follows: "A mortgage of personal property or crops is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless 1. It is acknowledged or proved and certified, in like manner as grants of real property; . . . 4. The mortgage, if of personal property other than crops growing or to be grown or animate personal property, is recorded in the office of the recorder of each of the counties where the property mortgaged is located and where the mortgagor resides at the time the mortgage is executed. . . ."

801] ; *Ruggles* v. *Cannedy,* 127 Cal. 290, 299-302 [53 P. 911, 59 P. 827, 46 L.R.A. 371] ; *F. C. Silverthorn & Sons* v. *Pacific F. Corp.,* 133 Cal.App. 163, 165 [23 P.2d 798].)     By virtue of section 70(c) of the Federal Bankruptcy Act (11 U.S.C. § 110(c)) plaintiff is possessed with the rights of a judgment creditor armed with a lien. Accordingly, while as a trustee in bankruptcy he may represent only general creditors he can still attack an invalid mortgage in the same manner as a creditor with a lien. (*Noyes* v. *Bank of Italy,* 206 Cal. 266, 269-270 [274 P. 68] ; *Schuch* v. *Northrup-Jones, Inc., supra,* pp. 288-289.)

     Turning to the applicability of section 3440.1 to the instant case with respect to the stock-in-trade owned and possessed by defendants at the time of the execution of the subject agreement of sale, we are of the opinion that the transfer and sale of such property did not contravene the provisions of this section which provided, in essence, that the sale, transfer, or assignment of a stock-in-trade, in bulk, or a substantial part thereof, other than in the usual course of business, was conclusively presumed to be fraudulent and void as against *existing creditors of the transferor* unless the requirements as to recording and notice of intended sale were complied with. It is clear that this section is for the benefit of the transferor's creditors. In the instant case we are not concerned with creditors of defendant-transferors but with claimants who became creditors of the transferee after the subject transfer.     As between the immediate vendor and vendee there is no requirement that a notice of intended sale be recorded and published pursuant to section 3440.1 in order that the sale or transfer be valid. (See *Jeffery* v. *Volberg,* 159 Cal.App.2d 815, 818-819 [324 P.2d 964].)

     With respect to defendants' repossession of Rynearson's stock-in-trade upon his default, defendants were entitled to repossess that portion of the stock-in-trade which constituted the original inventory as sold by defendants to Rynearson on August 31, 1960 because title thereto was reserved in the seller.     The reservation of title in the seller in a conditional sales contract is valid in this state as against the creditors of the buyer until the conditions of the contract have been fulfilled. (*Rodgers* v. *Bachman,* 109 Cal. 552, 556 [42 P. 448] ; *Vermont Marble Co.* v. *Brow,* 109 Cal. 236, 240-241 [41 P. 1031, 50 Am.St.Rep. 37] ; see 78 C.J.S., Sales, § 573, p. 293.) Accordingly, on default in performance of the contract by the buyer, the seller of goods conditionally sold may recover the

property sold without process of law. (*Liver* v. *Mills*, 155 Cal. 459, 462 [101 P. 299]; *Rogers Lamb Co.* v. *Coast Secur. Co.*, 58 Cal.App. 744, 745-746 [209 P. 246]; *Beaudry* v. *Peterson*, 50 Cal.App.2d 478, 482 [123 P.2d 108, 124 P.2d 637]; *Goldberg* v. *List*, 11 Cal.2d 389, 392-393 [79 P.2d 1087, 116 A.L.R. 900]; *Jordan* v. *Reynolds*, 108 Cal.App.2d 91, 94 [237 P.2d 1005]; see 78 C.J.S., Sales, § 597, p. 344.)

However, as to that portion of the stock-in-trade which constituted property acquired *after* the execution of the agreement of sale between the parties, defendants were not entitled to repossess such property, since, as hereinbefore indicated, such stock-in-trade did not come within the purview of the conditional sales contract. Although as to such property the agreement constituted a valid mortgage as between the parties, defendants were not entitled to repossess the same except by foreclosure proceedings as provided by section 2967[13] then in effect. While a stipulation in a chattel mortgage giving the mortgagee a right to possession on default is valid (§ 2927; *Flinn* v. *Ferry*, 127 Cal. 648, 652 [60 P. 434]; *Ely* v. *Williams*, 6 Cal.App. 455, 457-458 [92 P. 393]; *Elmore Jameson Co.* v. *Smith*, 34 Cal.App.2d 609, 613 [93 P.2d 1063]), there is nothing in the instant record to indicate that the agreement of sale expressly authorized the repossession of the after-acquired property. In any event, even if we assume that there was such right to possession as between the parties, it would have been ineffective as to Rynearson's creditors because, as we have stated above, the agreement was invalid as a mortgage as against such creditors.

It should be pointed out, moreover, that the repossession of the after-acquired property was ineffective as to Rynearson's creditors even if it be deemed a transfer of such property from Rynearson to defendants *dehors* the agreement of sale. The record does not indicate that the repossession was effected by the voluntary transfer or assignment of the after-acquired stock-in-trade by Rynearson to defendants; rather the inference from the agreed statement of facts is that it was involuntary. In any event, even if we assume that it was a voluntary transfer, such transfer would nevertheless be in fraud of Rynearson's creditors. Since title to such property was in Rynearson any sale, transfer, or assignment thereof,

---

[13]Section 2967 provided as follows: "A mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due, may foreclose the mortgagor's right of redemption by a sale of the property, made in the manner and upon the notice prescribed by the title on 'pledge,' or by proceedings under the Code of Civil Procedure."

other than in the ordinary course of trade and in Rynearson's regular and usual practice and method of business, would be conclusively presumed fraudulent and void as against Rynearson's existing creditors in the absence of compliance with section 3440.1. (*Jeffery* v. *Volberg, supra,* 159 Cal.App.2d 815, 818-819; *Kaye* v. *Jacobs,* 122 Cal.App. 421, 428-429 [10 P.2d 186].)

In view of the foregoing we conclude that defendants are entitled to that portion of the stock-in-trade which was the subject of the original inventory sold under the conditional sales contract between the parties and which had not as of the date of repossession been sold to bona fide subvendees for value; and we hold that plaintiff is entitled to that portion of the stock-in-trade which constituted after-acquired property. Since no apportionment was made in the court below there must be a retrial for the purpose of determining what portion of the stock-in-trade repossessed by defendants constituted original inventory and what portion consisted of after-acquired property. Upon such retrial in the event that the after-acquired stock-in-trade which defendants repossessed cannot feasibly be delivered to plaintiff, the court shall determine its value as of the date of repossession and shall award damages to plaintiff equal to this value. If such stock can feasibly be delivered to plaintiff but has diminished in value from what it was on the date of repossession plaintiff shall additionally be awarded damages equal to such difference in value.

The judgment is reversed with directions that the cause be retried on the limited issue herein indicated, and that upon such retrial appropriate findings be made on all the issues in accordance with the views herein expressed.

Sullivan, P. J., and Sims, J., concurred.