Opinion
FLEMING, J.
—Plaintiff-respondent Raleigh Industries of America, Inc. (Raleigh) and defendant-appellant Tassone, competing creditors of defendant Meredith, sought to satisfy their claims by resort to the inventory, equipment, and fixtures of a now-defunct bicycle business operated by Meredith.
*695 Meredith defaulted in the action, and Raleigh obtained judgment against him for $18,000. Thereafter in a nonjuiy trial between Raleigh and Tassone, the trial court found that a prior transfer of inventory to Tassone had violated the bulk transfer law (Cal. U. Com. Code, § 6101 ff.), and in February 1976 the court ordered the inventory sold at public auction to satisfy Raleigh’s judgment.[1] Tassone appeals.

History of the Controversy

For 20 months prior to August 1974, Tassone operated a bicycle shop in the San Fernando Valley. The business was a dealership franchised by Raleigh, a manufacturer of bicycles, bicycle accessories, and parts. In August 1974 Tassone sold the physical assets and the business for $39,000 to Meredith, who made a down payment of $18,000 and executed a promissory note for the balance of $21,000. A security agreement provided for a security interest in inventory, fixtures, and equipment sold, which were particularly described in exhibit A of the security agreement. However, by the time of the trial exhibit A had been lost. Nevertheless it was not disputed that the security agreement covered fixtures, equipment, bicycle accessories, and an inventory of bicycles— which Meredith testified consisted of approximately 100 bicycles. The terms of the security agreement did not specifically cover either additions to inventory or replacements for inventory sold.[2] Neither the agreement for the sale of the business nor the security agreement itself were ever recorded (§ 6107), nor was any attempt made to comply with provisions that prescribe the necessity for, and the formality of, filing a financing statement in order to perfect a security interest in movable goods. (§§ 9302, 9401, 9402, and 9403.)
Subsequent to Meredith’s purchase of the bicycle business, Raleigh entered a new franchise agreement with him and extended credit to Meredith for the purchase of bicycles and bicycle accessories for his inventory, the credit that provided the basis for Raleigh’s present claim.
*696 In February 1975 Meredith defaulted on his note to Tassone, whereupon Tassone, pursuant to the provisions of the security agreement and with Meredith’s consent, took possession of all physical assets of the business, including inventoiy, fixtures, and equipment, and moved them to his own place of business. According to Meredith, Tassone removed inventory consisting of 250 bicycles, of which 50 had been part of the original inventoiy sold him by Tassone. According to Tassone, he removed about 200 bicycles. The warehouse receipt issued by the storage company to which the bicycles were taken two days after their removal lists the number of bicycles at 205. Tassone sold a small part of the properly he removed, but the balance remained in storage as a consequence of Raleigh’s complaint, injunction, and attachment. At trial Meredith testified that in February 1975 he owed approximately $60,000, of which $18,000 was owed to Raleigh and $20,000 to Tassone.
The trial court found that Tassone’s security agreement was invalid because the statutoiy requirements for filing had not been complied with; that as a consequence Tassone did not possess a valid security interest in the inventory as against other creditors of Meredith; that the value of the inventory was in excess of $20,000; that the transfer of the inventory to Tassone in February 1975 was a transfer of all physical assets of the business without the requisite notice to creditors and hence it violated the bulk transfer law (§ 6102). The court ordered the inventory sold to satisfy Raleigh’s judgment against Meredith. The trial court made no finding and drew no distinction between original inventoiy, replacement inventory, and additional inventory, apparently concluding that the Februaiy 1975 seizure was equally invalid for the entire inventoiy. Because of the loss of exhibit A of the security agreement, it is not clear what portions of the inventory removed by Tassone were original inventory sold by Tassone to Meredith and what portions were later acquired by Meredith as replacement inventoiy or as additional inventoiy. However, it is uncontradicted on the record that only 50 of the 200 to 250 bicycles had been Tassone’s original property and described as collateral in exhibit A.
On appeal, the parties, understandably, take divergent views of the law applicable to the case. Appellant Tassone argues the following propositions:
1. As seller-creditor he acquired a purchase money security interest in goods sold and transferred to the buyer-debtor’s possession (§ 9107);
*697 2. He did not perfect his security interest by filing;
3. The parties assumed that the security agreement would cover after-acquired property;
4. His purchase money security interest was later perfected by the transfer of goods to his possession (§ 9305);
5. Because a purchase money security interest was involved, compliance with the bulk transfer law was unnecessaiy (§ 6103).
Respondent Raleigh sees the cause as controlled by a different set of propositions:
1. No purchase money security interest was created on Tassone’s sale of the business to Meredith because of lack of recordation and failure to file a financing statement;
2. Neither the inventory sold and transferred by Tassone nor after-acquired inventory purchased by Meredith became subject to a lien to secure Tassone’s note;
3. Transfer of possession of a debtor’s entire physical assets to a creditor is void under the provisions of the bulk transfer law that require 10 days advance notice to other creditors; without this notice the transfer may be set aside (§§ 6102, 6107);
4. Respondent has priority of lien over appellant because of priority of its attachment and judgment.
We find ourselves unable to agree entirely with either party. In reaching our own conclusions we have been compelled to reconcile the several provisions of the Commercial Code in order to accommodate the somewhat unusual factual features of the cause.[3]

*698
The Commercial Code—Repossession by Seller

We note, first, that the action is controlled by the Commercial Code, which declares that a security agreement is effective between the parties and against creditors, except as otherwise provided. (§ 9201.) To perfect a security interest in goods, the code requires either possession of the goods, actual or constructive, or, in instances of non-possession, a security agreement which has been publicized by the filing of a financing statement with the Secretary of State (§§ 9203, 9401). For a security interest in movable goods to be enforceable under the code the debtor must have signed a security agreement which describes the collateral. (§ 9203, subd. (1)(b).) Such a security interest attaches when (1) there is an agreement that it attach; (2) value is given; and (3) the debtor acquires rights in the collateral. (§ 9204.) At bench, Tassone’s security interest met these criteria, for it was evidenced by a writing signed by Meredith describing the collateral to which a security interest would attach, the parties had agreed it would attach, value was given, and Meredith acquired rights in the collateral on its transfer to him. Accordingly, at the time of the original sale of the business Tassone acquired an unperfected security interest in the specific goods identified as collateral by the security agreement. His failure to file a financing statement did not affect the validity of his security agreement. While the filing of a financing statement is an additional step that would have perfected Tassone’s interest and given, him priority against other creditors in respect to the goods described in the security agreement, filing is not necessary in order to create the security interest itself. (See Cal. U. Com. Code com. to § 9204, and the definition of security interest in § 1201, subd. (37).)
Raleigh, which became a lien creditor in February 1976, argues that Tassone’s failure to file a financing statement precludes him from ever perfecting his security interest in the goods described as collateral; therefore Raleigh was entitled to priority, in that a lien creditor takes priority over a creditor with an unperfected security interest (§ 9301). Under the code, however, repossession perfects a security interest in goods identified as collateral (§ 9305). Although such perfection does not relate back to the time the security interest was first created in the collateral, it does attach at the time of repossession and continues so long as possession is retained. (§ 9305.) What is more, Tassone’s action in repossessing the collateral is specifically authorized by section 9503—which provides that, unless otherwise agreed, a secured party has *699 the right to take possession of the collateral without judicial process on default of the debtor. Accordingly, Tassone legally perfected his security interest in the specific goods covered by exhibit A of the security agreement by repossessing the collateral from Meredith in February 1975 at a time Raleigh was still an unsecured creditor. Raleigh cannot claim priority as to the specific goods covered by the security agreement, because Tassone’s security interest in those goods had been perfected prior to the time Raleigh became a lien creditor. Raleigh’s argument against all types of perfection by repossession of a security interest in goods is without merit.

The Commercial Code—Purchase Money Security Interest and Bulk Transfer

But Raleigh also argues that the transfer of possession to Tassone of all of Meredith’s movable goods, including his entire inventory, was a bulk transfer (§ 6102), void against creditors for lack of the 10 days notice to creditors required by the code. (§§ 6105, 6107.) Tassone responds that section 6103, subdivision (3) specifically excludes from the provisions of the bulk transfer law a transfer of property in settlement of a security interest whose creation was exempt from the bulk transfer law, and that section 6103, subdivision (1) exempts a purchase money security interest from the requirements applicable to a bulk transfer. To resolve the issue we must determine whether Tassone’s security interest in the goods he took into his possession qualified as “purchase money.”
Section 9107 defines a purchase money security interest as a security interest “[t]aken or retained by the seller of the collateral [Tassone] to secure all or part of its price.” (Italics added.) Tassone’s security interest in the goods he originally sold to Meredith, listed in exhibit A, was clearly purchase money under section 9107, in that Tassone was the seller of the described collateral. But those goods only comprised part of the goods Tassone seized in February 1975, for the greater portion of those goods consisted of replacement inventory and additional inventory—which had been sold to Meredith by others. Absent any filing of a financing statement by Tassone and absent any specific reference to after-acquired property in the security agreement, Tassone cannot possibly qualify as “the seller of the collateral” with respect to these other goods; hence any security interest in them in favor of Tassone cannot qualify as a purchase money security interest. Tassone was not the seller of these after-acquired goods; the sellers were third parties, among them bicycle manufacturers such as Raleigh. Hence Tassone’s *700 purchase money security interest in Meredith’s goods, absent recordation or filing and absent an after-acquired property security agreement, was limited to the original goods purchased from Tassone, identified and described in exhibit A.
Even if Tassone had properly filed a security agreement which specified after-acquired property as collateral for a purchase money security interest, insofar as the agreement dealt with inventory (as opposed to fixtures and equipment) the scope of his security interest might have been further limited by the provision of section 9102, subdivision (4) which in 1975 stated: “(4) Notwithstanding anything to the contrary in this division, no nonpossessory security interest, other than a purchase money security interest, may be given or taken in or to the inventory of a retail merchant held for sale, except in or to inventory consisting of durable goods having a unit retail value of at least five hundred dollars ($500) ....”
An inventory of bicycles whose unit retail value is less than $500 is subject to the operation of this provision, which suggests that even a properly filed security agreement which specifies replacement inventory as collateral may not create a valid security interest in inventory items purchased from others. Holzman v. L. H. J. Enterprises, Inc. (9th Cir. 1973) 476 F.2d 949, grappled with the difficult question whether a properly filed security agreement which specifies a purchase money security interest in after-acquired goods that replace original purchase money inventory is valid. In construing the then California law the circuit court held that a duly filed and recordéd security interest in a stock of inventory sold to the debtor by the lien holder, can specify that it will also cover replacement inventory. The court observed that a security interest in inventory is a wasting interest if it does not attach to replacement inventory, because inventory by its nature turns over rapidly. The court also noted that “The state requirement for giving notice of the financial arrangements serves to protect future sellers of inventory as well as general creditors.” (P. 951.) In Holzman two critical distinctions from the factual situation before us must be noted: (1) The purchase money security interest was duly filed under California law, and (2) by its terms it categorically and specifically included replacement inventory. We agree with the circuit court that under the law as it stood at the time of the filing of this cause a properly filed purchase money security agreement may specify coverage of replacement inventory, replacement equipment,, and replacement fixtures described in the original security agreement—this even though section 9102, subdivision *701 (4) prohibits a nonpossessoiy secunty interest "in retail inventory other than a purchase money security interest. Conceptually, this coverage may be visualized as a periodic release of items of original inventoiy as sold and a periodic substitution of items of replacement inventoiy to serve as security in lieu of items of original inventory sold. Release of the original security interest perfected by filing, i.e., original inventory, provides new value sufficient to justify the lien on after-acquired collateral, i.e., replacement inventoiy. (§§ 9108, 9102, subd. (4), 9204, subd. (3).) The same principle would apply to replacement fixtures and replacement equipment.
But an interpretation of section 9102, subdivision (4) that allows a security interest in replacement inventory is no help to appellant, because a financing statement was never filed nor did his security agreement specify a security interest in replacement inventoiy. As to him the point is academic. We further note that a recent amendment to section 9102, subdivision (4), effective 1 January 1976, states, “[t]he phrase ‘purchase money security interest’ as used in this subdivision does not extend to any after-acquired property other than the initial property sold by a secured party . . .” The amendment makes it highly questionable whether under the new law a purchase money security interest can ever cover replacement inventoiy, even when the agreement so specifies and even when a financing statement has been properly filed.
Once we pass beyond replacement inventory to additions and expansions to inventory purchased from other sellers, nowhere does the code support the proposition that the seller of original inventory can acquire a purchase money security interest in additions to inventory purchased from other sellers. Clearly, when, as here, an inventory of bicycles was increased from 100 to 200 or 250, a purchase money security interest in favor of the original seller of inventory cannot cover additions to inventory, either under section 9102, subdivision (4) in its original form or under the section as it now reads. In short, it is clear that Tassone has no purchase money security interest in after-acquired inventory of Meredith. Such after-acquired inventoiy came from sellers other than Tassone, and Tassone cannot qualify as “the seller of the collateral” (§ 9107). Hence, the transfer of these goods to Tassone became subject to the bulk transfer law and void against an objecting creditor. (§ 6105.) We conclude that Tassone’s security interest was purchase money as to inventory he sold to Meredith, but not as to replacements and additions to inventory sold to Meredith by others. (For the same result reached *702 under pre-Commercial Code law, see Grover v. Tindall (1966) 242 Cal.App.2d 427, 437, 439-440 [51 Cal.Rptr. 617].)
From this analysis, it follows that since Tassone’s security interest in the original inventory was purchase money, it was exempt initially under 6103, subdivision (1) from the bulk transfer notice requirements; and because the creation of the lien was thus exempt, so also the transfer back of original inventory in settlement of the lien was exempt under 6103, subdivision (3). A creditor who possesses a purchase money security interest in specific goods he has sold may perfect that interest by taking possession of the collateral in satisfaction of that interest and thereby gain priority over general creditors who have not become lien or secured creditors prior to such possession. This interpretation accords with the California Uniform Commercial Code comment conclusion that section 9301 as written “. . . provides that an unperfected security interest is subordinate to the rights of lien creditors who acquire their liens without knowledge of the prior security interest and before it is perfected. The section rejects the rule, applied in many jurisdictions to chattel mortgages and in a few to conditional sales, that an unperfected security interest is subordinate to all creditors.” (West’s Ann. Cal. U. Com. Code, § 9301, p. 440.) (Italics added.)
However, the bulk transfer exemption of section 6103 only extends to purchase money security interests. Accordingly, Tassone seized more goods than he was entitled to take without notice, because only a minority of the items seized were items Tassone had originally sold to Meredith. To the extent that Tassone seized goods he had not himself sold to Meredith, his security interest was not purchase money, was not exempt from the bulk transfer law, and his seizure of such items without the required notice could be set aside by an unsecured creditor such as Raleigh. In sum, the seller of collateral can acquire a purchase money security interest in goods sold, even without the filing of a financing statement, and he can repossess the goods he himself sold. But he cannot repossess goods he never possessed, i.e., goods sold to the debtor by others. At bench, Tassone could not, without notice under the bulk transfer law, seize all movable goods, including the entire inventory of Meredith’s business, and apply them in satisfaction of his claim.
To resolve this cause it is necessary for the trial court to make a further factual finding that divides the goods Tassone seized into two groups: (1) items originally sold to Meredith, described in exhibit A, which became subject to the purchase money security agreement and which Tassone *703 was entitled to repossess; and (2) items of replacement inventory and additional inventory purchased from others, whose disposition was subject to the bulk transfer law, and whose seizure Raleigh was entitled to set aside.
The judgment is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion. Costs to appellant.

All references are to the California Uniform Commercial Code. All sums are given in rounded figures.

The security agreement did contain a provision declaring that collateral “installed in or affixed to” other goods or goods “installed in or affixed to” collateral become subject to the provisions of the security agreement. We do not read this provision as providing coverage for replacement or additional inventory. Rather its import is that a part incorporated in a larger whole becomes part of that whole, as does a tire when put on a bicycle or an inner tube when put into a tire.

We characterize the factual situation as unusual because most security agreements purporting to create a purchase money security interest in inventory (1) will be perfected by the filing of a financing statement, (2) will specifically refer to after-acquired replacement inventory, and (3) will specifically describe the inventory which is to serve as collateral. A further unusual feature of the present case is that for reasons which are not clear the trial court vacated the seizure of inventory by Tassone, but upheld his seizure of fixtures and equipment.