COMPTON, J.
—I concur in a reversal of the judgment but must respectfully dissent from the majority .decision to award Raleigh an interest in that part of the inventory which consists of replacement items.
*709 The two opinions which comprise the majority give some evidence of the difficulties we have encountered in attempting to effect a resolution in this case. The majority perceives a potential for fraud in the way in which Tassone conducted himself and thus have, in my opinion, misapplied the clear provisions of the California Uniform Commercial Code in an effort to reach a result which is “commercially sound.”
It could well be that the result which I believe to be compelled by the statutes is not “commercially sound” and would under some circumstances permit the perpetration of a fraud. There is no evidence in this case, however, that the arrangement between Meredith and Tassone was conceived in fraud. If the Uniform Commercial Code as adopted in California has a weakness, the Legislature is the proper branch of government to provide the correction. It is not proper for this court to add concepts to the statutory law which it does not contain nor to give interpretation to its words which are contrary to their plain meaning.
My Brother Roth in his well-reasoned concurring opinion indicates that he would give complete preference to Raleigh but advances a theory that was never advanced by Raleigh either in the trial court or in the briefs on appeal. Nevertheless I would point but that it is a fundamental rule that the courts should not weigh the quantum of consideration as long as it has some value. (Schumm v. Berg, 37 Cal.2d 174 [231 P.2d 39, 21 A.L.R.2d 1051]; Taylor v. Taylor, 66 Cal.App.2d 390 [152 P.2d 480].)
The conferring of a benefit on one party to the contract is sufficient consideration to support the contract. (See 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, §§ 150, 151, pp. 144-145.) The consideration here was that transfer to Meredith of a going business with inventory and good will.
The case before us is simply a contest between two creditors of a defunct business, one of whom holds a validly executed written purchase money security agreement and one of whom is a general creditor.
The majority concedes that Tassone’s security interest was at all times valid as between him and Meredith and as of the date of possession was “perfected” as against other general creditors at least insofar as the original inventory is concerned.
*710 Contrary to the majority’s statement, that security interest specifically recited that the “collateral” consisted of the present inventoiy as well as replacements, substitutions and additions.[1]
The Uniform Commercial Code clearly recognizes the validity of an after-acquired property provision in a security agreement. Such provisions constitute the major basis for inventoiy financing which is a widely used commercial device. (69 Am.Jur.2d, Secured Transactions, §§ 339-341, pp. 174-177.) Further the code throughout gives favorable treatment to persons who advance money for the purchase of the property to be used as collateral. (69 Am.Jur.2d, Secured Transactions, § 492, p. 363; also see Holzman v. L. H. J. Enterprises, Inc., 476 F.2d 949, cited by the majority.)
Also contrary to the majority’s statement, Tassone was the “seller of the collateral” as that term is used in Uniform Commercial Code section 9107. In fact the majority concedes this as to the original inventory. The point of departure is that part of the inventory which consists of replacement items. These items, however, are part of fhe collateral which was sold by Tassone because in any situation where inventory is pledged as collateral it is contemplated that there will be a turnover. How else could a business operate?
As the original items were sold Tassone released his security in contemplation of replacement. This is the essence of inventory financing. No reasonable interpretation of the code will permit the splitting of the collateral between original and replacement inventory which the majority attempts here.
The case of Grover v. Tindall, 242 Cal.App.2d 427 [51 Cal.Rptr. 617], which is.described as reaching the same result as the majority, appears to my reading to support a different result. True the court in that case refused to enforce an after-acquired property clause in a chattel mortgage on the inventory of a store but it did so on the basis of a *711 statute—Civil Code section 2955—which was repealed prior to the transaction in this case. That statute specifically prohibited a chattel mortgage on the stock in trade of a merchant. The recent amendment to the California Uniform Commercial Code section 9102, subdivision (4), referred to by the majority, which amendment came after the events of this case, points unerringly to the conclusion that after the repeal of Civil Code section 2955, and before the amendment, a security device such as the one now engaging our attention was perfectly valid and enforceable.
In the final analysis the result reached by the majority is that in a case where the collateral for a purchase money loan consists of inventory with a specific provision that it include replacement items, the purchase money security interest can only be perfected as to the replacement items by recording. This simply ignores the provision of California Uniform Commercial Code section 9305 and finds no basis in any other provisions of the code.
Tassone’s right to retain the inventory is based on the general rule that, as between the parties, an unrecorded or “unperfected” security interest in chattels is valid. As against general unsecured creditors who have not obtained a writ of attachment or other lien, such a security interest is “perfected” by taking possession of the property pursuant thereto. (Cal. U. Com. Code, § 9305.)
Section 9201 of the code prescribes that generally a security agreement is effective between the parties and as against creditors except as otherwise provided in the code. Section 9301 of the code “otherwise provides” by specifying that a creditor who has acquired a lien by attachment or levy has priority over the claim of an “unperfected” security interest.
As noted, Raleigh became a lien creditor in February of 1976. It now contends that Tassone had not perfected his security interest prior to that date and that by virtue of California Uniform Commercial Code section 9301, it had priority. Further, Raleigh argues that the transfer of the inventory from Meredith to Tassone was a “Bulk Transfer” (Cal. U. Com. Code, § 6102), and Tassone failed to give notice to creditors as required by the Bulk Transfer provisions of the California Uniform Commercial Code (Cal. U. Com. Code, § 6105).
Raleigh’s reliance on the bulk transfer requirements is misplaced. California Uniform Commercial Code section 6103 specifically exempts *712 from its provisions: (1) a transfer to give a purchase money security interest, or (2) a transfer made in settlement or realization of a lien or other security interest to which the property is subject if the creation of the lien was exempt.
It is undisputed that Tassone’s interest was a purchase money security interest, thus, the question here is simply whether Tassone had perfected that interest prior to the time Raleigh became a lien creditor. If so, the transfer was exempt from the Bulk Transfer provisions. If not, section 9301 would make Tassone’s interest subordinate to Raleigh’s in any event.
The filing of a financing statement is not the only way in which a security interest may be perfected. California Uniform Commercial Code section 9302 exempts from the filing requirement a security interest in collateral which is in possession of the secured party.
Where the collateral is not in possession of the secured party at the time the security interest is created, that security interest may be later perfected by the taking of possession. (Cal. U. Com. Code, § 9305.) In that event the security interest is perfected as of the time possession is taken, and although such perfecting of the interest does not relate back so as to give it priority over intervening lien creditors, it does continue so long as possession is retained. (Cal. U. Com. Code, § 9305.)
At the time Tassone took possession of the collateral pursuant to his purchase money security interest, Raleigh was merely a general creditor. It did not become a lien creditor until a later date.
Thus, even though Tassone’s interest does not relate back to the date of its creation, it was, pursuant to California Uniform Commercial Code section 9305, “perfected” as of the date of possession, a date on which Raleigh occupied the status of a general creditor.
The problem presented here is one which was subject to considerable discussion at the time of the adoption of the California Uniform Commercial Code in California as demonstrated by the extensive comments which follow California Uniform Commercial Code section 9301 (West’s Ann. Cal. U. Com. Code, § 9301, pp. 433-434.)
These comments analyze prior California and federal law in relation to the Model Code, concerning the rights of general creditors versus *713 holders of unperfected security interests. The comments conclude, however, that section 9301 as written “. . . provides that an unperfected security interest is subordinate to the rights of lien creditors who acquire their liens without knowledge of the prior security interest and before it is perfected. The section rejects the rule, applied in many jurisdictions to chattel mortgages and in a few to conditional sales, that an unperfected security interest is subordinated to all creditors.” (West’s Ann. Cal. U. Com. Code, § 9301, p. 440.) (Italics added.)
Here Tassone was lawfully entitled to take possession of the collateral by virtue of his chattel mortgage, and upon taking possession his position was at least as strong as that of any attaching general creditor as against a nonattaching general creditor.
The taking of possession by the holder of an unperfectéd purchase money security interest is no different in result than attachment by any unsecured creditor at least insofar as it affects other general unsecured creditors.
I have difficulty understanding the desire of the majority to give preference to Raleigh. Meredith owed money to both Tassone and Raleigh and the general rule based on the common law is to reward diligent creditors. Beyond that Tassone was a purchase money lender who has additional preference under the code.
Assume that both Raleigh and Tassone were both creditors with unperfected security interests looking to the same collateral in the debtor’s possession. Whichever perfected its interest first, either by taking possession or filing, would have priority whether or not he knew of the other’s interest. (See West’s Ann. Cal. U. Com. Code, § 9312, and example 2 which is contained in the comment following at p. 525.) Here the situation is not that evenly balanced because Raleigh had no security interest either perfected or unperfected. Raleigh was simply a general creditor who lost the race to attachment.
Another factor which in my opinion weighs heavily against Raleigh is the fact that after the transaction between Meredith and Tassone, Raleigh franchised Meredith as one of its dealers. Surely at that time it was in a position, having the bargaining power and resources of a large interstate supplier, to require Meredith as a condition of granting the franchise, to disclose the details of his acquisition of the business. Furthermore Raleigh could have easily shipped its merchandise on' *714 consignment or under a security arrangement that would have assured its priority against any unrecorded encumbrances.
I would reverse the judgment and direct the trial court to enter judgment for Tassone to the extent of Meredith’s indebtedness to him.

The clause reads: “DEBTOR hereby declares that should the Collateral or any part thereof ever be installed in or affixed to other goods or should other goods ever be installed in or affixed to or used in connection with the Collateral or any part thereof, specifically including, but not limited to. accessories, parts, replacements, substitutions, additions, improvements and repairs and the increase and increment thereof, then such acts of installation and/or affixation and/or use would be performed for the purpose, among other things, of such other goods being and becoming subject to the terms, provisions and conditions of this Agreement and to the security interest provided for herein, and a part of the Collateral and automatically referred to herein whenever said word is used as if originally subject hereto.”